689 So.2d 532 (1997)
Lynette Jones HALL, Plaintiff-Appellee,
v.
Edward J. HALL, Defendant-Appellant.
No. 96-954.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1997.
*533 George Leopold Celles, IV, Natchitoches, for Lynette Jones Hall.
Eric Roger Harrington, Natchitoches, for Edward J. Hall.
Before SAUNDERS, PETERS and AMY, JJ.
PETERS, Judge.
This suit involves a petition to disavow paternity based on the alleged misrepresentation, fraud, or deception of the mother, Lynette Jones Hall. Ms. Hall filed an exception of prescription which following a hearing, was granted by the trial court. Mr. Hall now appeals.

DISCUSSION OF THE RECORD
Edward J. Hall and Lynette Jones Hall were married on November 28, 1987. Toward the end of 1992, they ceased using any method of birth control, and Ms. Hall conceived almost immediately thereafter. The child who is the subject of this litigation, Erin Paige Hall, was born on June 29, 1993. It is not disputed that Mr. Hall was living with Ms. Hall at the time Erin was conceived and delivered.
The parties began living separate and apart on or about June 20, 1995, and on that date, Ms. Hall filed for a divorce. A judgment of divorce was rendered on May 29, 1996.
Mr. Hall asserts that while the divorce action was pending, he began to hear comments concerning rumors questioning Erin's true paternity. As a reaction to these rumors, he filed a petition to disavow paternity of Erin on October 26, 1995. Ms. Hall responded by filing an exception of prescription. Thereafter, Mr. Hall filed an ex parte motion for blood testing pursuant to La.R.S. 9:396 et seq. The trial court did not execute the order attached to the motion. On March 21, 1996, Mr. Hall amended his petition to allege that he was erroneously led to believe that he was Erin's father due to Ms. Hall's misrepresentation, fraud, or deception.
Following a hearing, the trial court sustained the exception of prescription. Mr. Hall now appeals, alleging that the trial court erred in sustaining the exception of prescription and in not requiring the blood tests to be performed.

OPINION
We first note that the law does not favor disavowal actions.
In order to protect innocent children against attacks upon their paternity, the law prohibits disavowal of paternity except *534 within extremely narrow limits and then only if done promptly after the birth of the child. Tannehill v. Tannehill, 261 La. 933, 261 So.2d 619 (1972). Because of the social and legal stigmas which attach to illegitimacy, our jurisprudence has established an unwavering dedication to the rule of strict construction of the articles governing disavowal actions. Pounds v. Schori, 377 So.2d 1195, 1200 (La.1979).
Guillory v. Guillory By Arceneaux, 615 So.2d 975, 977 (La.App. 1 Cir.1993). The husband of the mother is presumed to be the father of a child born or conceived during the marriage. La.Civ.Code art. 184. The husband has 180 days from the time he learns or should have learned of the birth of the child to bring an action to disavow paternity unless there exist reasons beyond the husband's control which prevent him from filing suit timely. La.Civ.Code art. 189. Erin was born on June 29, 1993. Absent an acceptable reason for delay, Mr. Hall should have filed an action for disavowal no later than December 27, 1993.[1]
Mr. Hall contends that he had an acceptable reason for delaying in that Ms. Hall led him to believe through misrepresentation, fraud, or deception that he was the biological father of Erin. However, Mr. Hall was aware of Erin's birth and in fact, was present when she was delivered. In applying La.Civ.Code art. 189, Louisiana courts have "routinely rejected a husband's allegations that misrepresentations concerning the paternity of a child constituted `reasons beyond his control,' causing him to forego instituting a disavowal action." Burke v. Ledig, 94-2044, p. 3 (La.App. 1 Cir. 5/5/95), 655 So.2d 546, 547 [quoting Mills v. Mills, 626 So.2d 1230, 1231 (La.App. 3 Cir.1993)], writ denied, 95-1857 (La.11/17/95), 663 So.2d 720. Clearly, any claim Mr. Hall may have had under La.Civ.Code art. 189 has prescribed.
Mr. Hall asserts that La.R.S. 9:305 applies in this case and that under that Article, his action has not prescribed. La.R.S. 9:305, which was enacted by Acts 1993, No. 32, § 1 of the legislature, provides as follows:
Notwithstanding the provisions of Civil Code Art. 189 and for the sole purpose of determining the proper payor in child support cases, if the husband, or legal father who is presumed to be the father of the child, erroneously believed, because of misrepresentation, fraud, or deception by the mother, that he was the father of the child, then the time for filing suit for disavowal of paternity shall be suspended during the period of such erroneous belief or for ten years, whichever ends first.
The only support presented by Mr. Hall for his disavowal action are hearsay statements concerning what the CEO of Ms. Hall's workplace[2] allegedly said in mixed company about Erin's paternity. This testimony was objected to on the basis that it was hearsay; the objection was sustained; and the testimony was proffered into the record. Mr. Hall has not raised the correctness of this ruling to this court. After reviewing the proffered statements, we do not find any basis for concluding that the trial court erred in disallowing these statements. Mr. Hall has no personal knowledge that Ms. Hall ever had a relationship with another man, and he has failed to present this court with any proof of her alleged infidelity. Mr. Hall was at liberty to call any of the people whom he contends made or heard statements questioning Erin's paternity, but he did not. The only proof offered by Mr. Hall is the fact that Ms. Hall went on a business trip to Atlanta with Dr. George Henderson[3] sometime around September or October 1992 and told Mr. Hall when she returned that "you know they say that I'm Dr. Henderson's woman." Mr. Hall apparently feels that this trip was the backdrop for the illicit affair which Ms. Hall allegedly had with Dr. Henderson and that Erin was conceived during this trip. However, Ms. Hall testified that she has never had a sexual relationship *535 with a man outside of her marriage; has never given Mr. Hall any reason to doubt Erin's paternity; and has never discussed Erin's paternity with anyone at work. She contends that Mr. Hall is Erin's father.
In his reasons for ruling on the exception, the trial judge stated:
The burden of proof is on Mr. Hall to show fraud, misrepresentation, or deception on the part of Ms. Hall. He based his suit to disavow on a hearsay statement made to him by an acquaintance that the child in question may not be his. This vicious rumor has caused Mr. Hall to have grave doubt as to the paternity of this child. He offers no proof of any fraud, misrepresentation, or deception. Mrs. Hall testified that she had been faithful to her husband during their marriage.
It is too bad that Mr. Hall would let a unfounded, hearsay, speculative assertion by a so-called friend lead him to the filing of a suit for disavowment. The action by Mr. Hall is totally and completely without foundation.
We conclude that the trial court's determination of whether Mr. Hall presented sufficient evidence to support his contention of misrepresentation, fraud, or deception was a factual finding.[4] It is a well-settled principle that this court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). This court's assignment is not to determine whether or not the trier of fact was right or wrong but rather to determine whether the fact finder's conclusion was a reasonable one. Stobart v. State, Dep't of Transp. & Dev., 617 So.2d 880 (La.1993). If the trial court's findings of fact are reasonable in light of the entirety of the record, this court may not reverse such findings even if we feel that we would have viewed the evidence differently and reached a different result. Rosell, 549 So.2d 840.
We do not find that the trial court was manifestly erroneous in finding that Mr. Hall had not satisfied his burden of proof by presenting only second-hand hearsay statements concerning rumors. The consequences at stake in this case, the illegitimation of a child, are too great to allow Mr. Hall to satisfy his burden of proof by testifying as to what someone else told him that someone else said about Erin's profile. We find that the trial court was not clearly wrong in determining that Mr. Hall's disavowal action had prescribed.
By his second assignment of error, Mr. Hall contends that the trial court should have required the blood tests to be performed. This court has previously addressed this issue of court-ordered blood tests in disavowal actions in Lastrapes v. Willis, 93-1417 (La.App. 3 Cir. 4/6/94), 635 So.2d 1281, writ denied, 94-1547 (La.9/30/94), 642 So.2d 871.
In In Interest of J.M., [590 So.2d 565 (La.1991),] the supreme court was concerned with the question of what must be established in a paternity suit to trigger court-ordered blood testing. It concluded that the moving party must first show a reasonable possibility of paternity. In our view, that conclusion is equally applicable to a situation where an alleged father is attempting to disavow a minor child. The record discloses that Mr. Lastrapes failed to prove a reasonable possibility of a lack of paternity. He did not establish a prima facie case warranting issuance of a court-ordered blood test under the rationale of In Interest of J.M., supra.

Id. at p. 3, 635 So.2d at 1283.
We conclude that Mr. Hall has also failed to prove a reasonable possibility of a lack of paternity. Additionally, once the trial court determined that Mr. Hall's action had prescribed, the blood test order became moot. We find no merit to this assignment of error.

DISPOSITION
For the foregoing reasons, the decision of the trial court is affirmed and all costs are *536 assessed to defendant-appellant, Edward J. Hall.
AFFIRMED.
NOTES
[1] December 26, 1993, was a Sunday. Therefore, Mr. Hall could have filed his suit the following Monday, December 27, 1993.
[2] Ms. Hall was employed as the deputy director of the Natchitoches Outpatient Clinic at the time Erin was conceived and remains so employed to date.
[3] The rumors that Mr. Hall allegedly heard concerning Erin's paternity supposedly named Dr. Henderson as the suspected father of Erin.
[4] The trial court disposed of this case without reaching the issue of whether this action was brought ancillary to a child support proceeding pursuant to La.R.S. 9:305. Since we affirm the trial court's decision, we also find it unnecessary to address this issue.