| .DECUIR, Judge.
Pamela Whiddon appeals a trial court judgment in favor of her former husband, Charles Whiddon, in an action to disavow paternity and set aside a child support order. The trial court overruled exceptions of prescription, res judicata, and no cause of action and ruled in favor of the husband on the merits of the case. We affirm.
Charles and Pamela were married in July of 1975. During the course of their marriage, two children were born: the first on December 1, 1979, and the second on June 16, 1985. The couple separated in January of 1986 and a judgment of divorce was signed on September 9, 1986. Pamela was designated as the custodial parent of the two children; Charles was granted visitation privileges and was ordered to pay child support. In 1994, Pamela moved for an increase in child support, and Charles sought joint custody. Both parties were granted the relief they requested.
Charles subsequently arranged to have blood tests performed on himself and his younger child. The test results revealed that Charles is not the biological father Lof the child, who is now thirteen years of age. Charles first petitioned the court to disavow paternity in an action filed in February of 1995. The trial judge overruled exceptions of prescription and no cause of action and ruled in favor of Charles on the merits. This court reversed the ruling on prescription, and Charles’ status as legal father was restored. Then, in 1997, *298 Charles filed the instant suit to disavow paternity based on an amendment in the pertinent legislation concerning such actions. Exceptions of prescription and no cause of action were again overruled, as was Pamela’s exception of res judicata.
This court first addressed Pamela and Charles’ situation in Whiddon v. Whiddon, 96-104 (La.App. 3 Cir. 6/5/96); 676 So.2d 674. We determined that Charles’ action to disavow filed on February 21, 1994, was not timely because it was not filed within 180 days of his knowledge of the child’s birth, as required by La.Civ.Code art. 189, nor was it filed within 180 days of the effective date of La.R.S. 9:305, which at the time provided as follows:
Notwithstanding the provisions of Civil Code Art. 189 and for the sole purpose of determining the proper payor in child support cases, if the husband, or legal father who is presumed to be the father of the child, erroneously believed, because of misrepresentation, fraud, or deception by the mother, that he was the father of the child, then the time for filing suit for disavowal of paternity shall be suspended during the period of such erroneous belief or for ten years, whichever ends first.
The effective date of the statute was provided for in Section 2 of Act No. 32 of the 1993 legislative session:
The provisions of this Act shall be applied retrospectively such that a husband or legal father who, because of the mother’s misrepresentation, fraud, or deception, erroneously believed he was the father of the child, and whose action for disavowal has prescribed, may institute such an action ancillary to any child support proceeding brought within one hundred eighty days of August 15, 1993, and any such suit not instituted within that time and any claims relating thereto shall be forever barred.
hOur decision in Whiddon I interpreted La.R.S. 9:305 to provide prospectively a maximum ten-year period for bringing an action to disavow; in other words, the new statute would apply only to legal fathers whose children were born 180 days before the effective date of the statute or thereafter. For those actions which had already prescribed, as had Charles’ action, a shorter period of 180 days from the effective date of the statute was granted. This interpretation was also adopted in Fruge v. Fruge, 96-344 (La.App. 3 Cir. 11/6/96); 682 So.2d 932, but the issue was not addressed in Hall v. Hall, 96-954 (La.App. 3 Cir. 2/5/97); 689 So.2d 532, although similar facts were presented. Other courts of this state have reached similar conclusions in Brannan v. Talbot, 29,692 (La.App. 2 Cir. 4/2/97); 691 So.2d 848, writ denied, 97-1419 (La.9/19/97); 70Í So.2d 172, and Burke v. Ledig, 94-2044 (La.App. 1 Cir. 5/5/95); 655 So.2d 546, writ denied, 95-1857 (La.1 1/17/95); 663 So.2d 720.
In 1997, La.R.S. 9:305 was amended to provide that in the event an order of disavowal is obtained, it shall not affect any child support payment or arrears paid, due, or owing prior to the filing of the disavowal action. We quote in pertinent part the legislative act, No. 1110, which created this amendment:
AN ACT to amend and reenact R.S. 9:305, relative to disavowal of paternity; to provide for the period in which child support payments are owed; to provide additional time for disavowal actions; to provide with respect to the status of a child in certain circumstances; and to provide for related matters.

Be it enacted by the Legislature of Louisiana:

Section 1. R.S. 9:305 is hereby amended and reenacted to read as follows: § 305. Disavowal of paternity; ancillary to child support proceeding
A. Notwithstanding the provisions of Civil Code Art. 189 and for the sole purpose of determining the proper pay- or in child support cases, if |4the husband, or legal father who is presumed to be the father of the child, erroneously *299 believed, because of misrepresentation, fraud, or deception by the mother, that he was the father of the child, then the time for filing suit for disavowal of paternity shall be suspended during the period of such erroneous belief or for ten years, whichever ends first.
B. No provision of this Section shall affect any child support payment or arrears paid, due, or owing prior to the filing of a disavowal action if an order of disavowal is subsequently obtained in such action.
Section 2. The provisions of R.S. 9:305 as enacted by Act. No. 32 of the 1993 Regular Session of the Louisiana Legislature and amended and reenacted by this Act shall be applied retrospectively such that a husband or legal father who, because of the mother’s misrepresentation, fraud, or deception, erroneously believed he was the father of a child, and whose action for disavowal has prescribed may institute such an action ancillary to any child support proceeding brought within one hundred eighty days of August 15, 1997 and any such suit not instituted within that time and any claims relating thereto shall be forever barred.
Because the legislative act which sets forth and authorizes this action specifically provides for a 180-day period in which previously prescribed disavowal actions can be filed, and this action was filed during that period, we affirm the trial court’s judgment. Just as in 1993, the legislature in 1997 granted a brief period in which to bring disavowal actions which were otherwise prescribed. As a result, between August 15,1997, and approximately February 15,1998, a legal father could bring a previously prescribed disavowal action ancillary to a child support proceeding. Because Charles’ action was filed on August 25, 1997, and was brought ancillary to a child support proceeding, we conclude that his action has not prescribed.
We also conclude that the trial court properly overruled the exceptions of res judicata and no cause of action filed by Pamela and the curator representing the child. The only issue decided by this court in Whiddon I was prescription; we did not rule on the merits of the disavowal action. Furthermore, in the present disavowal action, Charles requests only prospective relief from the child support order, as allowed by |sLa.R.S. 9:305(B); he does not ask us to revisit the order reinstating his child support obligation. Additionally, the 180-day period described in Section 2 of Act No. 1110 applies to all actions which have previously prescribed including, by implication, those actions which have been judicially declared to have prescribed. For these reasons, we find Charles’ cause of action is not barred by res judicata. We also conclude that the petition for disavowal does state a cause of action under La.R.S. 9:305.
Finally, addressing the merits of the trial court’s judgment, we discuss briefly the factual finding that Pamela misrepresented to Charles that he was the father of the child. The record reveals that Pamela consistently represented to Charles that he was the baby’s father, from the time they separated in 1986 until the results of the genetic tests were obtained. The record also discloses that while Pamela was involved in an ongoing affair with another man, she suggested to Charles that they have another baby. Charles testified that he agreed. Pamela announced that she was pregnant very soon thereafter. However, the baby was born almost six weeks before the due date testified to by Pamela, and the parties now dispute whether she was in fact born prematurely. No medical evidence was offered on this issue. The results of the genetic tests showing that Charles was not the father give support to Charles’ contention that the baby was more than likely born at term. Given this evidence, we find no error in the trial court’s conclusion that Charles’ erroneous belief that he was the child’s father was caused by the misrepresentation, fraud, or deception of Pamela.
*300 For these reasons, the judgment of the trial court is affirmed. Costs are assessed to Pamela Whiddon.
AFFIRMED