861 So.2d 168 (2003)
Michael Joseph GALLO
v.
Brenda Ann Conner GALLO.
No. 2003-C-0794.
Supreme Court of Louisiana.
December 3, 2003.
*170 Ammon L. Miller, Jr., New Orleans, for Applicant.
Lee Vance Faulkner, Jr., Gretna, for Respondent.
WEIMER, Justice.
Upon initial inspection, this case presents an issue regarding reimbursement of money. Upon closer scrutiny, one finds issues which explore the underpinnings of the parent-and-child relationship. An ex-husband is asserting a right to recover monies he paid to his ex-wife for the support of a minor child, born during the marriage, who for many years he believed was his biological child. Years after the couple's divorce, it was determined another man was actually the biological father. The trial court denied the ex-husband's claim for reimbursement from his ex-wife. Reversing, the court of appeal awarded the ex-husband reimbursement for the child support paid to the ex-wife. For the reasons that follow, we reverse the court of appeal's ruling and deny the ex-husband's demand for reimbursement.

FACTS AND PROCEDURE
Michael Gallo and Brenda Ann Conner Gallo were married in 1978 and divorced in 1992. Three children were born during the course of the marriage; the youngest, M.L.G., was born April 27, 1985. After the Gallos separated in 1991, the children resided with Mr. Gallo in the family residence.
Numerous procedural matters ensued, generating pleadings and/or documents, which were filed in No. 92-8740 consolidated with No. 92-8972 in the Civil District Court for the Parish of Orleans and which now constitute the record before us. By judgment dated October 6, 1993, Ms. Gallo was ordered to pay $676.00[1] monthly to Mr. Gallo for the support of the three children, but she was to receive a credit for the tuition she paid directly to the school for M.L.G.
In March of 1995, Ms. Gallo petitioned the court for custody of the three children or, according to the pleading, "at least" custody of M.L.G. Mr. Gallo opposed the change, filing a "Memorandum" in which he made several allegations of Ms. Gallo's failures at parenting and of the "stability" established between himself and the three daughters after the mother had left them. He claimed that as their father, he was the only person who had provided the daughters with a "consistent, dominant presence in their lives." Despite his initial opposition to the change in custody, the Gallos entered into a consent judgment in which provisional custody of M.L.G. was awarded to Ms. Gallo and the parties agreed to attend seminars on parenting skills and communication skills for divorcing couples.
The next year, Ms. Gallo moved for termination of the child support she had previously been ordered to pay, alleging the two older daughters were then 19 and 18 *171 years of age. Judgment terminating her child support obligations was rendered September 20, 1996.
Later, Ms. Gallo filed a rule to show cause why Mr. Gallo should not be ordered to pay child support for M.L.G. The issue was eventually resolved by a May 22, 1998 consent judgment establishing Mr. Gallo's child support obligations.
Mr. Gallo's "Petition to Disavow Paternity" was filed in September 1998, naming Ms. Gallo and the minor, M.L.G., as defendants. The petition alleges that Mr. Gallo is "not the father of [M.L.G.], notwithstanding the fact that the parties were married at the time of her birth.... Petitioner was led to believe that the child ... is his child and erroneously believed the child to be his child." The petitioner requested that an attorney be appointed to represent the minor so that service could be made and the action prosecuted contradictorily against this attorney. An attorney was appointed by the court, but neither he nor counsel for Ms. Gallo filed an answer to the "Petition to Disavow Paternity."
The next pleading of significance is a motion to compel paternity blood testing. A hearing was held at which counsel for Mr. Gallo, counsel for Ms. Gallo, and appointed counsel for M.L.G. appeared. On July 13, 2000, a judgment was rendered ordering Ms. Gallo and M.L.G. to submit to blood and tissue tests by appointed experts to determine inherited characteristics.
Filed into the record on September 19, 2000, is a notarized form entitled, "Louisiana Vital Records Registry Three Party Acknowledgement [sic] of Paternity (Non-hospital) Legitimate Child." The form lists Ms. Gallo as the mother of the registrant and Mr. Gallo as the "legal presumptive father." Joseph Nelson is listed as the biological father. The form states that those three persons agree that the name of the father on the birth certificate shall be changed to the name of the biological father and that the child's name remain the same. The form contains the signatures of Mr. Gallo, Ms. Gallo, Mr. Nelson, two witnesses, and a notary.
On September 20, 2000, the trial court signed what is entitled a "judgment" stating that "this matter" had been heard that date. This judgment reflects that counsel for Mr. Gallo and counsel for Ms. Gallo were present; there is no indication of the presence of counsel who had been appointed to represent M.L.G. The judgment states that the court considered the three-party acknowledgment of paternity[2] and ordered that Michael Gallo is deemed not to be the biological father of M.L.G. The judgment also relieved Mr. Gallo of his legal obligation to pay for support of the minor child. The judgment does not mention disavowal or Mr. Gallo's status as legal presumptive father. This judgment was not appealed.
In December 2000, Mr. Gallo filed a rule to show cause why Ms. Gallo should not be required to reimburse a total of $22,125.00 he had paid in child support for M.L.G., plus costs of health insurance paid by him, the costs of paternity testing, and attorney fees. Counsel for Ms. Gallo filed an "Opposition" to Mr. Gallo's demands for reimbursement which points out that Mr. Gallo never disavowed M.L.G.; there is no judgment of disavowel in the record. Further, Mr. Gallo agreed to pay the child support in a consent judgment.
*172 On October 26, 2001, the trial court signed a judgment denying Mr. Gallo's request for reimbursement of the child support he had paid; however, the judgment ordered Ms. Gallo to pay $500.00 in attorney fees and $300.00 for paternity tests. Counsel for Ms. Gallo filed a notice of intent to apply for a supervisory writ for review of the awards of attorney fees and testing costs.[3] Counsel for Mr. Gallo filed a notice of intent to appeal the denial of the child support reimbursement.
The court of appeal reversed the trial court's denial of reimbursement from the mother, finding no prohibition in the law of such reimbursement once an "alleged" father is proven not to be the father of the child. The court of appeal noted the matter was submitted on a brief from Mr. Gallo only.[4] Although the appellate court opinion noted Mr. Gallo sought to disavow paternity of his youngest daughter on September 4, 1998, the opinion makes no further mention of the action to disavow or the disposition or lack of disposition of that issue. The court of appeal decreed "the judgment of the district court denying Michael Gallo's claim for reimbursement in the amount of $22,125[5] for child support and medical payments is hereby reversed." Gallo v. Gallo, 02-0575, p. 3 (La.App. 4 Cir. 2/19/03), 840 So.2d 1223, 1224.
Upon application by Ms. Gallo, this court granted a writ. Gallo v. Gallo, 03-0794 (La.6/6/03), 845 So.2d 1074.

DISCUSSION
The issue in this case is not whether the law prohibits reimbursement of the child support payments, as the court of appeal indicated, but whether the law allows reimbursement. The question calls for consideration of how the legislature and the courts have dealt with the concepts of child support in light of fluctuating mores and trends in family law. See, T.D. v. M.M.M., 98-0167, p. 4 (Knoll, Justice, concurring) (La.3/2/99), 730 So.2d 873, 878-879; see also, LSA-R.S. 9:305, quoted infra. The historical background of child support principles is explained in CHRISTOPHER L. BLAKESLEY, LOUISIANA FAMILY LAW § 16.02 at 16-2, 16-3 (Louisiana Civil Code Series Issue 1, 1996):
Louisiana's Civil Law tradition,[[6]] from its French and Spanish beginnings, *173 provided for the parental obligation of child support. The Common Law did not have such an auspicious beginning. The Elizabethan Poor Laws in England during the 16th century were the initial weak and ulteriorly motivated attempt to make the father pay the parish ... for child support given his child.... Louisiana's and continental Codes influenced child support legislation in the rest of the United States. [Original footnotes omitted.]
"The sources of law are legislation and custom." LSA-C.C. art 1. In Louisiana, as in all codified systems, legislation is the superior source of law. LSA-C.C. art. 1, cmts. (a) and (c). Legislation cannot be abrogated by custom. LSA-C.C. art. 3. Accordingly, the starting point of our analysis is with the codal articles to determine the status of the parties and their reciprocal rights and obligations.
"The husband of the mother is presumed to be the father of all children born or conceived during the marriage." LSA-C.C. art. 184.[7] "A suit for disavowal of paternity must be filed within one year[8] after the husband learned or should have learned of the birth of the child; but, if the husband for reasons beyond his control is not able to file suit timely, then the time for filing suit shall be suspended during the period of such inability." LSA-C.C. art. 189. The policy embodied in the restrictive provisions of the Louisiana Civil Code dealing with the action to disavow is to protect innocent children, born during marriage, against scandalous attacks upon their paternity by the husband of the mother, who may be seeking to avoid paternal obligations to the child. Williams v. Williams, 230 La. 1, 7-8, 87 So.2d 707, 709 (1956).[9] Thus, the traditional and historical *174 position of Louisiana jurisprudence was to zealously guard and enforce the presumption created by Article 184. Pounds v. Schori, 377 So.2d 1195, 1200 (La.1979). The fundamental ends achieved by such court action were preservation of the family unit, avoidance of the stigma of illegitimacy, and aversion to the disinheritance that resulted from a successful disavowal action. There is a public interest in dispelling doubts as to legitimacy which demands the establishment of a relatively short time for bringing challenges. These considerations contributed to this court's holding, in 1979, that the period of time in which a husband must file a suit for disavowal to defeat the presumption of his paternity is peremptive. Id.
Twenty years later this court noted that once the bonds of matrimony are dissolved by divorce, the State's interest in preserving the marital family disappears. T.D. v. M.M.M., 98-0167 at 3-4 (concurring opinion), 730 So.2d at 878. Although some rights spring from the dissolution of a lawful marriage, today's realities are that illegitimacy and "broken homes" are neither rarities nor stigmas as in the past. Id. Other relatively recent changes in this area of the law include the legislative action making the presumption regarding paternity rebuttable instead of conclusive;[10] Louisiana's recognition of dual paternity; and the acceptance of DNA testing as conclusive scientific evidence of biological paternity. Id.; see also, cases cited therein.
Nevertheless, recognition by this court that the time period in which a presumptive father must file a suit for disavowal is peremptive has not been repudiated. This court's recognition of peremption as a concept distinct from prescription formed the basis of enactment by the legislature in 1982 of LSA-C.C. arts. 3458-3461. See LSA-C.C. art. 3458, Revision Cmts. 1982(b), citing Pounds, 377 So.2d 1195. "Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period." LSA-C.C. art. 3458. "The provisions on prescription governing computation of time apply to peremption." LSA-C.C. art. 3459. "Peremption may be pleaded or it may be supplied by a court on its own motion at any time prior to final judgment." LSA-C.C. art. 3460. "Peremption may not be renounced, interrupted, or suspended." LSA-C.C. art. 3461.
The one-year peremptory time limitation for bringing a challenge to the paternity of a child born during a marriage begins on the date of the child's birth rather than when the husband becomes aware of the wife's alleged fraud and allegedly learns that he is not the father of the child. See Pounds v. Schori, 369 So.2d 1090, 1092 (La.App. 1 Cir.1979),[11]aff'd, 377 So.2d 1195; accord, Brugman v. Prejean, 288 So.2d 702, 704 (La.App. 3 Cir.1974.) Thus, being unaware of misrepresentation or fraud by the mother is not the "inability" to file suit to disavow which LSA-C.C. art. 189 allows as a bar to the commencement of the peremptive period.
Further, Mr. Gallo's right to disavow pursuant to LSA-C.C. art. 189, once perempted, was not revived by the three-party acknowledgment entered into by Mr. *175 Gallo, Ms. Gallo, and Mr. Nelson. This court has held that in the absence of a husband's action to disavow within the statutory period, the right to assail the legitimacy of a child born during a marriage becomes extinct, precluding a mother from establishing her child as the illegitimate offspring of another man. Evans v. Roberson 176 La. 280, 284,145 So. 539, 541 (1933).
Accordingly, we hold sua sponte[12] that Mr. Gallo's right to rebut the LSA-C.C. art. 184 presumption of paternity was perempted because he did not file an action for disavowal within a year of M.L.G.'s date of birth, April 27, 1985. Thus, the "Petition to Disavow Paternity" will be dismissed with prejudice as being perempted.
However, despite his failure to meet the requirements of the civil code provisions regarding disavowal, Mr. Gallo argues he has a statutory right to bring a disavowal action pursuant to LSA-R.S. 9:305. We will now consider that specific statute.
Enacted in 1993 and amended in 1997, LSA-R.S. 9:305 addresses disavowal of paternity ancillary to a child support proceeding.[13] The statute provides:
A. Notwithstanding the provisions of Civil Code Art. 189 and for the sole purpose of determining the proper payor in child support cases,[[14]] if the husband, or legal father who is presumed to be the father of the child, erroneously believed, because of misrepresentation, fraud, or deception by the mother, that he was the father of the child, then the time for filing suit for disavowal of paternity shall be suspended during the period of such erroneous belief or for ten years, whichever ends first.
B. No provision of this Section shall affect any child support payment or arrears paid, due, or owing prior to the filing of a disavowal action if an order of disavowal is subsequently obtained in such action.
For several reasons, the provisions of LSA-R.S. 9:305 are of no avail to Mr. Gallo to show that the peremptive period of Article 189 was "suspended." First, the record before us is devoid of proof of "misrepresentation, fraud, or deception by the mother." This fact cannot be established ipso facto from the results of the blood test establishing that Mr. Gallo is not the biological father of the child. It is apparent from the various pleadings of Mr. Gallo that he perceived himself to be the actual father, although subsequent tests demonstrated he was not the biological father. If otherwise, Mr. Gallo would not have acted for years in accordance with his belief, now proved to be erroneous, that he was the biological father of M.L.G. There is no direct evidence to establish whether Ms. Gallo herself knew who the biological father was prior to the blood test.
*176 Second, the suspension allowed by LSA-R.S. 9:305 lasts during the period of the husband's erroneous belief or for ten years, "whichever ends first." Mr. Gallo did not file his "Petition to Disavow Paternity" until September 1998, more than thirteen years after M.L.G.'s birth.
Third, when the legislature amended LSA-R.S. 9:305, a provision in 1997 La. Acts, No. 1110, § 2 states that the statute would be applied retrospectively for a husband whose action to disavow had already prescribed only if the husband brought an action ancillary to a child support proceeding within 180 days of August 15, 1997. Mr. Gallo, whose action to disavow pursuant to Article 189 was perempted in 1986, cannot now avail himself of the statutory suspension in LSA-R.S. 9:305 because he did not bring his action until September 4, 1998, well beyond the 180-day grace period. 1997 La. Acts, No. 1110, § 2; cf. Whiddon v. Whiddon, 98-1844, p. 4 (La. App. 3 Cir. 5/5/99), 736 So.2d 296, 299, writ denied, 99-1606 (9/17/99), 747 So.2d 566.
In this matter, Mr. Gallo's action to disavow was perempted at the time suit was filed. Thus, any action which is predicated upon disavowal of the child, such as a claim for reimbursement of child support, was likewise unavailable to him at that time.
Lastly, even if Mr. Gallo were able to pursue an action of disavowal pursuant to LSA-R.S. 9:305, the statute would bar recovery of the child support payments he previously made. Section B of the statute clearly states the statute does not affect any child support payment "paid, due, or owing prior to the filing of a disavowal action if an order of disavowal is subsequently obtained in such action." If LSA-R.S. 9:305(B) prohibits any effect whatsoever on child support payments following an order of disavowal obtained subsequently to filing a timely suit for disavowal of paternity, a fortiori, there is no authority for a presumed father, such as Mr. Gallo, who has not procured an order of disavowal, to be reimbursed payments he has made.[15]
Next, we must determine if there is any other legal basis which, absent disavowal, allows reimbursement to Mr. Gallo.
Louisiana Civil Code, article 2299, provides, "A person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it." This court recently held that when monies were paid while a judgment in a plaintiff's favor was being appealed devolutively and, after payment, the judgment was reversed, the payor could recover the monies pursuant to Article 2299. Gootee Construction, Inc. v. Amwest Surety Insurance Company, 03-0144 (La.10/10/03), 856 So.2d 1203. Although a final judgment relieves Mr. Gallo of future child support, the "debt" of child support he paid prior to that judgment was not *177 rescinded or annulled as was the debt in Gootee Construction, Inc.
An examination of the child support jurisprudence reveals the courts of appeal have struggled with the issue of what circumstances cause a father's payment of child support to be "a thing not owed" so that LSA-C.C. art. 2299[16] would be applicable and reimbursement would be owing. For example, in State ex rel. S.L.J. v. Hammond, 32,508, p. 3 (La.App. 2 Cir. 12/8/99), 749 So.2d 814, 816, the court held the State had an obligation under this article to restore to a father child support payments that were collected from him pursuant to an income assignment after the child reached 18 years of age. However, the payments Mr. Gallo seeks to recover were made to a child under the age of 18.
"Fathers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining, and educating their children." LSA-C.C. art. 227.[17] Thus, proof of birth during marriage establishes the obligation of support. State v. Kiper, 408 So.2d 1312, 1314 (La. 1982) (Husband of the mother was presumed to be the father of her children born during the marriage and was obligated to support them even pending his actions to disavow paternity.). The law has changed since Kiper, which was a suit brought by the State on a charge of criminal neglect of family. This court has subsequently held that use of the presumption that the husband of the mother is the father of the child to prove the essential element of "parenthood" in a criminal prosecution under Title 14 of the Revised Statutes violates federal and state constitutional guarantees of due process. State v. Jones, 481 So.2d 598 (La.1986); see also, State v. Prosper, 580 So.2d 1085, 1088 (La. App. 4 Cir.), writ denied, 590 So.2d 84 (1991), citing State v. Jones.
In the instant case, the appellate court correctly distinguished this civil proceeding from the criminal neglect of family cases relied upon by Mr. Gallo. However, the court of appeal erred in interpreting our disposition of a claim for reimbursement in another support case brought by the purported father against the State and the mother. In State v. Jackson, 575 So.2d 507 (La.App. 5 Cir.1991), the court of appeal held the State, not the mother, was liable for reimbursement of child support payments made pursuant to the Aid to Families with Dependent Children provisions set forth in LSA-R.S. 46:231 et seq. This court granted a writ reversing only that part of the judgment ordering the State to reimburse Jackson. State v. Jackson, 580 So.2d 367 (La.1991). This court made no mention of the mother's obligation to make reimbursement. Further, Jackson and the instant case are factually different: Jackson was a "purported" father who entered into an agreement with the State to pay child support; Gallo is the legal presumptive father. Consequently, the appellate court in the instant case erred in interpreting Jackson as authority for granting the presumptive father reimbursement pursuant to his claim against the mother.
Jackson was examined in State, Dept. of Social Services v. Bradley, 95-872 (La. App. 5 Cir. 4/30/96), 673 So.2d 1247, writ denied, 96-1318 (6/28/96), 675 So.2d 1129. That case involved a claim for reimbursement *178 by a man who was not married to the mother of the child, making that case factually distinguishable from the instant one. Bradley paid child support through the State for approximately seven years and then discovered, through DNA testing, that the child was not his. He claimed a refund from the State or an offset against future support for a second child of the mother that was his. The majority rejected his claim for a refund from the State, citing Jackson. As to the claim for the offset, the majority, citing no codal or statutory authority, found it would not be equitable to deprive the second child of support, thereby penalizing the child for errors her father contributed to and participated in. Bradley, 95-872 at 2, 673 So.2d at 1249. The dissent, also citing no codal or statutory authority, was of the opinion that equity demanded Bradley be reimbursed for amounts paid in child support for a child he did not father. The dissent found Jackson was not clear, and that reimbursement could come from the mother, either in the form of a direct payment or as a credit against future child support due for the second child. Bradley, 95-872 at 1 (dissent), 673 So.2d at 1249.
The dissent in Bradley reads Jackson too broadly. The bottom line in Bradley, as in the instant case, is that although the child support payments were made to the mother, they were made for the benefit of the child, and the mother is under no obligation to refund the monies. Because the child support payments were received by the child, through the mother, the mother was not a person who received a payment not owed her, a requirement imposed by LSA-C.C. art. 2299 for reimbursement to be made.
Proper analysis recognizes that it is not the adults but the child who is at the center of this unfortunate controversy. A father's obligation to support his children is a "primary, continuous obligation," based during marriage on parental authority and after divorce on tutorship. BLAKESLEY, LOUISIANA FAMILY LAW § 16.02 at 16-5. The child is the veritable creditor of each parent's unilateral obligation for the child's upbringing with the special expenses it entails. Id. at 16-6. This father-child relationship between Mr. Gallo and M.L.G. did not end with blood testing that showed Mr. Gallo was not the biological father of M.L.G. He remained her legal presumptive father and was identified as such in the three-party acknowledgment. Fatherhood rests on something more than genes. See, T.D. v. M.M.M., 98-0167 at 2 (concurring opinion), 730 So.2d at 878, citing Lehr v. Robertson, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). Furthermore, Louisiana has recognized dual fatherhood. In Smith v. Cole, 553 So.2d 847, 854, (La.1989), this court held that the failure of the husband of the mother of the child to exercise his right to disavow paternity timely established the child as his legal and legitimate child. The legal tie of paternity would not be affected by subsequent proof of the child's actual biological tie. This court specifically held that although the child was conclusively presumed to be the husband's legitimate offspring, the biological father could not escape his support obligations. The question of whether the legal, presumed father also shared in the support obligation was not before the court, and this court declined to hold the legal father will, in all factual contexts, be made to share the support obligations with the biological father and the mother.[18]Id. at 855.
*179 A concomitant of the obligation of child support is the parental authority the father has over the child. "A child, whatever be his age, owes honor and respect to his father and mother." LSA-C.C. art. 215. "A child remains under the authority of his father and mother until his majority or emancipation." LSA-C.C. art. 216. "The father is, during the marriage, administrator of the estate of his minor children." LSA-C.C. art 221. However, this administration ceases upon judicial separation from bed and board of the parents. Id. Our civil code, so grounded in familial solidarity, recognizes a reciprocal obligation of support imposed on children. "Children are bound to maintain their father and mother and other ascendants, who are in need." LSA-C.C. art. 229.
Other benefits Mr. Gallo received stem from the fact that for four years following the couple's separation, Mr. Gallo had custody of the child he petitioned to disavow. The right to be considered as the parent who should have custody has been defined as a status that "embrace[s] the sum of parental rights with respect to the rearing of a child, including the child's care; the right to the child's services and earnings; the right to direct the child's activities; the right to make decisions regarding the control, education, and health of the child; and the right, as well as the duty, to prepare the child for additional obligations, which includes the teaching of moral standards, religious beliefs, and elements of good citizenship." Michael H. v. Gerald D., 491 U.S. 110, 118-119, 109 S.Ct. 2333, 2339-2340, 105 L.Ed.2d 91 (1989), quoting from 4 CALIFRONIA FAMILY LAW § 60.02[1][b] (C. Markey ed.1987). Mr. Gallo was entitled to all of the many benefits of fatherhood, not the least of which are the love and affection of this child he considered his and reared as his for so many years. There is nothing in the record to indicate that Mr. Gallo did not receive the love and affection of this child, that he did not feel the special, precious bond a father enjoys with a daughter. In this respect, Mr. Gallo has received much from this child.
Although Mr. Gallo finds himself in an unfortunate situation, which includes adultery by his former wife and the realization this child is not biologically his, he cannot recover the monies he has paid as child support because they were not wrongfully paid (LSA-C.C. art. 2299) and because such a recovery is barred by clear, concise, and specific legislation (LSA-R.S.9:305(B)).
We have mentioned the concerns of some of the lower courts of this state for the "dueling equities" involved in a case such as this and concern for equitable treatment of the father and of the mother. However, we must note that the most vulnerable person in this unfortunate litigation is M.L.G. Problems similar to those in the instant case have troubled our sister states. In a case touted as one of first impression in the nation, Peterson v. Ransome, 8 Phila.Co.Rptr. 461 (Pa.Com.Pl.) (1983), a mother was estopped from denying a putative father's paternity where for six years the mother acknowledged the father's paternity to the child, to the putative father, and to the community. The court noted:
[I]t would be callous not to imagine the emotional trauma sustained by a child who, after six and one half years, is told that his father, in a psychological sense, is not his natural father. To say ... that the law cannot remedy this injury because the child must know his natural father would be contrary to public policy.... [T]he subsequent psychological harm visited upon the child by a unilateral severance of the bond with the putative *180 father is a direct result of years of such representations.
Id. at 489.
In the instant case, the psychological harm to the child is magnified by the fact that she was held out as the biological daughter of Mr. Gallo by all concerned for 13 years.
Similarly, In re Marriage of Pedregon, 107 Cal.App.4th 1284, 132 Cal.Rptr.2d 861 (2003), is a case in which the appellate court held the trial court abused its discretion in not ordering the husband to pay child support as the child's putative father. The opinion recognized that:
the importance of a putative father continuing his paternal relationship with a child, including providing emotional and financial support, when the father has represented to the child and the child has been led to believe over a lengthy period of time that the father is his natural father. "We are dealing with the care and education of a child during his minority and with the obligation of the party who has assumed as a father to discharge it. The law is not so insensitive as to countenance the breach of an obligation in so vital and deep a relation, undertaken, partially fulfilled, and suddenly sundered." [Citations omitted.] [Emphasis supplied.]
Id. 107 Cal.App.4th at 1290, 132 Cal. Rptr.2d at 865.
Thus, to order a reimbursement in the instant case would be to repudiate all of Mr. Gallo's duties and obligations to M.J.G., a child he treated as his own, along with her two sisters, for the first 13 years of her life. As we mentioned previously, Mr. Gallo judicially admitted his "stable" relationship with his three daughters was an important presence in their lives.

CONCLUSION
Accordingly, we hold the court of appeal's reversal of the denial of Mr. Gallo's reimbursement claim was erroneous for several reasons. First, Mr. Gallo's attempted disavowal action, asserted in his "Petition to Disavow Paternity," was perempted because it was not brought within a year of the child's birth as required by LSA-C.C. art. 189. Second, the peremptory period of Article 189 was not suspended pursuant to LSA-R.S. 9:305 because his "Petition to Disavow Paternity" was not filed within 10 years of the child's birth as required by Subsection A of that statute or within the 180-day grace period following the 1997 amendment to that statute. Third, reimbursement of child support payments previously paid is specifically barred by LSA-R.S. 9:305(B). Finally, Ms. Gallo was not required to make reimbursements because she did not receive "a thing not owed" as required by LSA-C.C. art. 2299; child support payments are made for the benefit of the child, not the mother.
For these reasons, we dismiss with prejudice the "Petition to Disavow Paternity" as having been perempted; we reverse the judgment of the court of appeal, and we deny Mr. Gallo's motion for reimbursement.
PETITION DISMISSED WITH PREJUDICE; JUDGMENT REVERSED.
VICTORY J., concurs.
JOHNSON, J., dissents and assigns reasons.
JOHNSON, Justice dissenting.
I must dissent. The statutory presumptions put in place years ago to protect children born during a marriage were necessary when science had not advanced to a point where paternity could be determined with any degree of certainty. Today, with accurate DNA testing available, there is no *181 longer a need to presume that the husband of the mother is the father of the child. In this case, DNA testing excluded Michael Gallo as the biological father of M.L.G. In addition to the DNA test results, the record contains a three party acknowledgment of paternity, where the mother, the legal presumptive father, and the biological father all agreed that Mr. Gallo is not the father of M.L.G.
We have an archaic statutory structure with time limitations to either disavow paternity or to establish filiation. Where the facts are as clear as they are in this case, we should declare that Mr. Gallo and this child have no mutual obligations of support. This lack of filiation should operate, in like fashion, against Mr. Gallo and preclude him from ever bringing a survival action or wrongful death claim on behalf of this child, should M.L.G. predecease him.
NOTES
[1] This amount was later amended to $200.00 monthly.
[2] Although this acknowledgment is filed in the record, there is no indication it was ever admitted into evidence.
[3] There is no indication in the record that a writ was ever pursued. Thus, the judgment ordering Ms. Gallo to pay these two items has become final.
[4] In this court, counsel for both parties debate whether counsel for Ms. Gallo had proper notice of the appeal and the filing of opposing counsel's brief. Nevertheless, the record establishes that Ms. Gallo did not respond at the appellate level. Thus, the court of appeal did not have the benefit of opposing argument in considering Mr. Gallo's appeal. Our disposition of the merits of this case makes it unnecessary to address this procedural issue.
[5] There is nothing in the record to suggest that there was any evidence introduced to establish the amount of child support paid by Mr. Gallo. It appears the court of appeal based its judgment on allegations in Mr. Gallo's pleadings.
[6] Family solidarity was one of the three ideological pillars of the Code Napoleon, along with freedom of contract and private property; these ideological pillars were considered necessary to overthrow the complex restraints of feudalism. Shael Herman, "The Louisiana Civil Code: A Europeon Legacy for the United States" (1993) at p. 38.

The drafters of the [Louisiana] Civil Code considered the family the basic cell of society and the protector of the future of society. The Civil Code provisions were influenced by middle class values and specifically by a sense that the family was a closely knit group under the authority of... strong parents. These values are reflected particularly in provisions concerning the economic rights of a family to the wealth accumulated by a family member. When one considers the financial shakiness of the public institutions designed to keep the family afloat (welfare, social security, etc.), it is heartening to find a private law concerned with the material well-being of the family. If the Civil Code rules we describe appear anachronistic, perhaps it is because we no longer share the code drafters' assumptions about the centrality of the family's role in society.
In the disposition of property, the Civil Code promotes family solidarity. Although in other states familial financial responsibilities do not routinely go beyond what is necessary for periodic support of dependent children and spouses, Louisiana law has traditionally imposed support obligations on a parent and has generally insured that a spouse will receive family capital in the form of community property and that minor and incompetent children will receive fixed shares. Although responsibility to a person's family restricts his autonomy, the code's restrictions permit considerable latitude to dispose of property outside the family circle, to favor one minor child over another, and even to alter the share of capital to which a spouse is entitled. These features of code regulation permit the conclusion that the Civil Code stresses family responsibility over individual autonomy to a greater extent than the law of other states in which the balance tips towards autonomy. [Footnote omitted.]
Id. at 53-54.
[7] For a thorough history of this presumption see T.D. v. M.M.M., 98-0167 at 1-4 (Kimball, Justice, dissenting), 730 So.2d at 880-882.
[8] Previous to a 1999 amendment to Article 189, the time period had been one hundred and eighty days. Although that time period was in effect at the time of M.L.G.'s birth in 1985, the legislature specified that the amendment was to have retroactive effect.
[9] In Williams, the husband of the mother requested an order requiring the mother and the daughter he was attempting to disavow to submit to blood testing. The order was denied, and thus, the husband was unable to rebut the presumption of LSA-C.C. art. 184, which at that time was a conclusive presumption. The rationale of Williams is still viable although, since 1989, the law has allowed a husband, in a disavowal action, the use of negative blood tests as proof that he is not the biological father of the child born during his marriage to the mother. LSA-C.C. art. 187(1).
[10] Act 430 of the 1976 Regular Session, amending LSA-C.C. arts. 184-190.
[11] The court of appeal stated there was nothing in the record or pleadings to suggest that the time limitation commenced at any date other than the date of the child's birth. This observation was made despite the husband's allegation in his petition to disavow that he did not cohabit with his wife at a time when she could have conceived a child. We note Mr. Gallo has made no such allegation.
[12] See LSA-C.C. art 3460, quoted supra, which allows this court to notice peremption on its own at any time prior to final judgment.
[13] Once again, we note there is no judgment in the record which serves to disavow this child.
[14] As previously mentioned, Louisiana recognizes dual paternity. Smith v. Cole. 553 So.2d 847, 854 (La.1989). However, the legislature's enactment of LSA-R.S. 9:305 "for the sole purpose of determining the proper payor in child support cases" appears to be a modification of the concept of dual paternity. Thus, the legislature has expressed a concern for an equitable solution to the unfortunate situation of a man paying child support for a child who is not his biological child, but was born during the marriage to the mother. See discussion, infra, of State, Department of Social Services v. Bradley, 95-872 (La.App. 5 Cir. 4/30/96), 673 So.2d 1247, writ denied, 96-1318 (628/96), 675 So.2d 1129.
[15] The judgment relieving Mr. Gallo of his child support obligation is not an "order of disavowal" as called for in LSA-R.S. 9:305(B). The attorney appointed to represent M.L.G. did not participate in the hearing that resulted in that judgment which stated Mr. Gallo was not deemed to be the biological father of M.L.G. The disavowal action attempted by Mr. Gallo suffers from many other infirmities. First, the petition was not answered by either the mother or the child; thus, issue was not joined. Second, there is nothing in the record to indicate any evidence was presented to the court, such as the blood test results or the three-party acknowledgment. The purpose of the appointment of an attorney for the child in an action to disavow is not to obtain service on the child, but to insure that the legitimacy of the child will be maintained wherever possible and that the strict requirements of proof are met. Stewart v. Stewart, 233 So.2d 305, 309 (La.App. 1 Cir.1970).
[16] The lower courts have seldom cited Article 2299.
[17] Child support legislation is now "vast, various and spread out over numerous codes and statutes." BLAKESLEY, LOUISIANA FAMILY LAW § 16.01 at 16-1. A list of pertinent legislation given by Professor Blakesley is a helpful resource for statutory authority regarding child support. Id.
[18] In the instant case that identical question is not before this court.