BROWN, Chief Judge.
L These consolidated cases arise out of disputes over the mineral rights in two separate tracts of land in Caddo Parish, *766 Louisiana. In both cases, in the early 1900s, a strip of land was dedicated for a public road. Both tracts were bisected by the roads. The ownership of the roadbeds is critical in determining who now owns the minerals underlying the roads and whether the mineral servitudes have prescribed through non-use. The district court consolidated the two cases and heard arguments on all motions for summary judgment pertaining to the ownership of the roadbeds. The trial court rendered separate opinions, and found, as a matter of law, that Caddo Parish owned both roadbeds. Thus, the mineral servitudes on both tracts were divided. The trial court rendered partial summary judgments in both cases, designated them as final judgments and expressly determined that there was no just reason for delay. La. C.C.P. art. 1915 B(l). This appeal followed. We reverse, render and remand.

Discussion

“It is relevant to note that prior to the advent of the mineral industry in Louisiana, the subject of public ownership of dedicated property was important only insofar as it governed the use to which dedicated property could be put.” Garrett v. Pioneer Production Corp., 390 So.2d 851, 855 (La.1980). The dedications in these cases were made in 1913, 1914, 1924, and 1928. Today, these tracts are in the Haynesville Shale, and there are large bonuses and royalties at issue.
| ¿The Webb Tract and Flournoy-Lucas Road
The Webb case involves a strip of land across a 1,750-acre tract in south Caddo Parish. On September 11, 1913, J.W. Railsback executed a standard form dedication (“the 1913 dedication”) with the pre-printed language, “I ... do hereby dedicate to the public use for a public road, the following described land,” followed by a handwritten description of a 25- to 50-foot strip of land, “part of what is known as the Lucas-Forbing Road[,]” under which appears the preprinted statement, “The said property to be used for public road purposes only.”
On June 14, 1914, F.F. Webb executed an identical standard form dedication (“the 1914 dedication”) with a handwritten description of a 25-foot strip running diagonally across the lots described in Sections 4 and 5, T 16 N, R 13 W.
On February 22, 1924, F.F. Webb executed yet another standard form dedication (“the 1924 dedication”) with a typewritten description which “supercedes [sic] part of the previous deed[.]” The strip of land described in these dedications is now known as Flournoy-Lucas Road, which runs east-west across the middle of the tract.
In May 1979, Webb’s successors partitioned the tract but retained the minerals; wells drilled north of Flournoy-Lucas Road have been maintained without any 10-year lapse. By cash deeds in 1985 and 1997, Franks Investment acquired mineral rights and surface rights, in the tract, and leased them to Twin Cities Development, which subleased to Chesapeake. These entities (“the Franks defendants”) maintained that the 1913, 1914, |sand 1924 dedications conveyed to Caddo Parish full ownership of the roadbed of Flournoy-Lucas Road, thus splitting the mineral servitude pursuant to La. R.S. 31:73. They contended that operations conducted north of Flournoy-Lucas Road did not interrupt prescription as to the land south of the road; in essence, that the mineral servitude affecting the land south of the road prescribed for nonuse. Webb’s successors countered that Caddo Parish had only a right of passage or servitude that did not divide the tract. Thus, operations north of *767 the road maintained the mineral servitude to the south.

The Allen Tract and Blanchard-Furrh Road

The Allen case involves a strip of land across a 295-acre tract north of Shreveport. Jacobs Land Company is the common ancestor in title for all parties. On January 31, 1928, Jacobs Land Company executed the same standard form dedication as in the Webb case (“the 1928 dedication”) with the same preprinted language, “I ... do hereby dedicate to the public use, for a public road, the following described land,” followed by a typewritten description of a 100-foot wide strip traversing the tract, “known as the Blanchard-Furrh Road[,]” creating a northwest and southeast portion. Finally, the form provided, “The said property to be used for public road purposes only.”
In 1991, Jacobs Land Co. sold the tract but retained the minerals; Allen and 42 others are the current surface owners. In 2003, Jacobs Land Co. sold the mineral rights to Huddleston Energy Reserves, which later (after the announcement of the Haynesville Shale) leased the minerals to |4Chesapeake. Allen and the other surface owners, however, maintained that the 1928 dedication conveyed to Caddo Parish full ownership of the roadbed of Blanchard-Furrh Road, thus splitting the mineral servitude.

Applicable Law

A.N. Yiannopoulos, Property § 96, in 2 Louisiana Civil Law Treatise (4th ed.2001) wrote:
Gradually, it became settled that the public may acquire in Louisiana an interest in the land on which a road is built or in the use of a road in a variety of ways. Thus, the public may acquire land or a servitude for the construction and maintenance of a public road by one of the methods of the Civil Code by which ownership or servitudes are acquired, including purchase, exchange, donation, expropriation and prescription. Most frequently, however, the public acquires an interest in a road by dedication.
The dedication of private property to a public use may be accomplished in a number of ways. Sometimes perfect ownership of the land passes to the public body; sometimes only a servitude is established in favor of the public. At issue in these consolidated cases is whether a servitude or fee title was given in the formal dedications of the roads. This will determine who owns the minerals underlying the roads and on each side of the roads. These dedications were all on a standard preprinted form used by the Caddo Parish Police Jury and were executed in 1913, 1914, 1924 and 1928. The parties are in agreement that these were formal dedications to the Caddo Parish Police Jury (now Caddo Parish Commission) for road purposes.
In each of the dedications, the preprint-ed form states: “I ... do hereby dedicate to the public use, for a public road, the following described land,” | [¡followed by either a handwritten or typewritten description. Finally, the form provides, “The said property to be used for public road purposes only.”
The plaintiffs in the Webb case and defendants in the Allen case point out that the granting of the dedications were voluntary, that no compensation was given, that they specifically limited the purpose for which the property could be used and contained no language conveying fee title to the Parish. On the other hand, the proponents of public fee ownership claim that the absence of any language in the instruments to the effect that the grantor retained ownership or that only a servitude *768 was granted vest the Parish with full ownership of the property. In short, the grantors of the dedication would require a written clause in the deed that specifically conveys ownership to the Parish, while the other side would require the grantors to have a written reservation of ownership or specify that only a servitude was given. In this case, the instruments in question have no language either conveying or reserving title to the property.
In Hatch v. Arnault, 3 La.Ann. 482 (1848), the supreme court was faced squarely with the issue and held that the public has merely a servitude on the soil on which the road is built. The court grounded its opinion on Article 654 of the Louisiana Civil Code of 1825, which is the same as Article 658(2) of the 1870 Code.
Article 658(2) (1870) provided that “the soil of public roads belongs to the owner of the land on which they are made though the public has the use of them.” In 1978, C.C. Article 457 was enacted. The redactors comments state that this article was based on articles 704 through 706, and | fi658(2) of the Louisiana Civil Code of 1870 and “[I]t does not change the law.”
The question is whether the dedicating instruments granted fee title to the Parish or just a servitude.
In Jones Island Realty Co. v. Middendorf, 191 La. 456, 460-461, 185 So. 881, 882 (La.1939), the court stated that:
A mere reading of the act of dedication conclusively shows that plaintiff did not intend to convey title in fee to the property described in the act of dedication to the Louisiana Highway Commission, but merely to grant a servitude ... The consideration is the advantages accruing to it [plaintiff] by reason of the location of the Hammond-New Orleans 461 Highway, through and upon its property ... and is made for and shall be solely used for the construction and maintenance of a public road from Hammond La. to New Orleans, La. ... and for no other purpose. [Noel Estate, Inc., v. Kansas City Southern & Gulf Ry. Co. et al., 187 La. 717, 175 So. 468 (1938)].
In Texas & P.R. Co. v. Ellerbe, 199 La. 489, 492, 6 So.2d 556, 557 (La.1942), the supreme court wrote that:
In Moore Planting Co. v. Morgan’s Louisiana & T.R. & S.S. Co., supra [126 La. 840, 53 So. 23 (1908) ], we said: ‘A right of way may consist either of the fee, or merely of a right of passage and use, or servitude. Whether the one or the other is meant in any particular instrument must be gathered from the instrument as a whole. As a general rule, only a servitude is meant.’
In Sun Oil Co. v. Stout, 46 So.2d 151, 153 (La.App. 2d Cir.1950), this court through Judge Kennon (later Governor Kennon) observed that:
It is well-settled in this State that in deciding whether a fee simple title to land has been conveyed or a servitude or right-of-way thereupon has been granted by a deed, the intention of the parties thereto must be determined from the stipulations in the entire instrument, with a view of giving effect to all of the provisions therein contained and thereby avoid neutralizing or ignoring any of them or treating any of them as surplus-age.
[[Image here]]
17An examination of all of the above cited cases and of other cases involving the point at issue discloses that generally in right-of-way cases — whether the same be for rail or canal purpose — the Courts have construed the intent of the parties to be to grant a servitude only and have held that the fee title remained in the owner of the land over which the right-of-way was granted. This is in line with *769 the modern practice of companies con-strueting cross-country pipelines, etc. to acquire only right-of-way rights through the lands over which the lines run. In cases in which the instrument granted a parcel of ground for a particular purpose such as a city market, sugar refinery, or house of worship, the Court has usually found that it was the intent of the parties to grant a fee title subject to the resolutory condition. This is consistent with the usual practice of religious and community service organizations to acquire a regular fee title to the land on which its buildings may rest.
Those claiming that the dedications in the cases sub judice gave fee ownership to Caddo Parish argue that Louisiana’s law of dedication to public use is summarized in St. Charles Parish School Bd. v. P & L Inv. Corp., 95-2571 (La.05/21/96), 674 So.2d at 218, 221 as follows:
Louisiana has never enacted a comprehensive scheme of dedication to public use. However, Louisiana courts have recognized four modes of dedication: formal, statutory, implied, and tacit. A landowner may make a formal dedication of a road by virtue of a written act, such as a deed of conveyance to the police jury of the parish. The written act may be in notarial form or under private signature. A.N. Yiannopoulos, Property § 95, at 204-205 [2 La. Civ. L. Treatise, 3 ed.1991]. A formal dedication transfers ownership of the property to the public unless it is expressly or impliedly retained. Yiannopoulos, Property § 95, at 208-209. If the landowner retains ownership of the property, the public acquires a servitude of public use. (Emphasis added).
From Yiannopoulos’s statement, as quoted by the Louisiana Supreme Court, the proponents of fee ownership in the Parish claim that “all formal dedications are, as a matter of law, conveyances of full ownership unless some contrary expression of grantor’s intent is provided.” They would Lrequire a written retention of ownership by grantor or the inclusion of the word “servitude.” We do not agree with such a restricting limitation.
The St. Charles Parish School Board case involved a tacit dedication; the school board constructed and maintained the road for more than three years. A tacit dedication arising by operation of statute involves public maintenance of a road or street for a specified period of time. La. R.S. 48:491. The public acquires by virtue of a tacit dedication a servitude of passage. Gatson v. Bailey, 39,835 (La.App.2d Cir.06/29/05), 907 So.2d 859. The St. Charles Parish School Board case did not involve a formal dedication, as in the instant cases. See Cenac v. Public Access Water Rights Ass’n, 02-2660 (La.06/27/03), 851 So.2d 1006, which overturned St. Charles Parish School Board as to the requirements of a tacit dedication.
The quote from Yiannopoulos that “A formal dedication transfers ownership of the property to the public unless it is expressly or impliedly retained” must be read together with what Yiannopoulos stated in A.N. Yiannopoulos, 3 Predial Servitude § 130, in 4 Louisiana Civil Law Treatise (4th ed.2004).
An instrument granting a right of way may contemplate either the creation of a servitude of passage or the transfer of the ownership of a strip of land. Louisiana courts have repeatedly held that “whether the one or the other is meant in any particular instrument must be gathered from the instrument as a whole.” The general rule is that “the conveyance of a right of way is generally meant to be merely a servitude, unless the deed itself evidences that the parties intended otherwise.”
*770 [[Image here]]
Quite frequently, landowners granting servitudes employ language and forms generally used in sales of immovable property, coupled with qualifying clauses designating the creation of a servitude rather than transfer of ownership. In a typical case, an instrument declared that a described tract of land had been “sold and conveyed for railroad | ¡¡purposes only” and that the grant was “in perpetuity or so long as it is used by said Company, its successors and assigns, for railroad purposes, but if abandoned, for such use and purpose, then said land shall revert to the grantor herein or his heirs and assigns.” The court, interpreting the instrument as a whole, reached the conclusion that the intention of the parties was to create a servitude only. [Texas & P.R. Co. v. Ellerbe, 199 La. 489, 6 So.2d 556, 557 (La.1942)].
In the cases sub judice, the parties have historically treated the land underlying the roads as servitudes. In April 1930, the Parish Engineer wrote a letter (“the engineer letter”) to an out-of-state landowner stating that a deed using the same standard form used in the 1913, 1914, 1924, and 1928 dedications “reads for public road purposes only and the Parish would have no right to exploit the mineral rights[.]”
In 1957, the Caddo Parish Police Jury received an inquiry from a landowner concerning a road created by a standard form deed like those in the present cases. In response, the police jury passed a resolution (“the 1957 resolution”) stating that “in order to clear the title to the ownership of the mineral rights under a public road the Caddo Parish Police Jury hereby declares that it makes no claim to the ownership of the mineral rights by virtue of the deed[.]”
Finally, in 1983, the Police Jury passed another resolution (“the 1983 resolution”) stating:
[A]ll dedications of public road rights-of-way ... where the dedication instruments contained statements that the property was to be used for public road purposes only and where the instruments cited no financial consideration in favor of the grantors, shall be henceforth considered by Caddo Parish only to constitute grants of public servitudes and rights-of-way, ... and Caddo Parish does hereby waive all present and future claims to fee title and to mineral rights relating to the property described in such instruments. (Emphasis added).
JjjThis Resolution was immediately recorded in the Conveyance Records of Caddo Parish on April 25, 1983; and obviously, for the past thirty years has influenced title work in Caddo Parish.
The court in Clement v. City of Lake Charles, 10-703 (La.App.3d Cir.12/08/10), 52 So.3d 1054, 1058, speaking to the difference between statutory and formal dedications stated:
Statutory dedication and formal dedication are two different modes of dedication. See Yiannopoulos, Property § 97 (4th ed.2001). A landowner who ordinarily sells his land may never formally dedicate anything to the public use. On the other hand, a landowner who divides his property into lots with streets or alleys between them and then sells the lots must, in addition to performing other duties, dedicate to public use all the streets, alleys, and public squares or plats. La. R.S. 33:5051. Because in formal dedication the act of dedication is voluntary, there is a greater need to guard against a landowner’s inadvertent mistakes. Thus, the landowner may impliedly retain ownership of the dedicated land without any specific reservation. S. Amusement [Co., Inc. v. Pat’s of Henderson Seafood & Steak, Inc.], 871 *771 So.2d 630 [ (La.App. 3 Cir.2004) ]; Yiannopoulos, Property § 97 (4th ed.2001).
Unlike statutory dedication, formal dedications do not require fee ownership of the roadbed. The formal dedication is voluntary and there is no need for the public ownership of roadbeds. The public interest is in the use of the road. These roadbeds were given without compensation for a particular and limited purpose. The fact that the dedications did not include any language conveying fee title to the underlying roadbeds is indicative of an intent to retain ownership.
The dedications in the cases sub judice, clearly support the conclusion that only a servitude was given. There was no language dedicating fee title to Caddo Pai'ish; there was no compensation given; there were specific limitations on the purpose for which the property could [nbe used; and, the dedications have been historically treated as servitudes. The engineer’s letter of 1930, the resolution of 1957, and the resolution of 1983 clearly expressed the Caddo Police Jury’s (now Caddo Parish Commission’s) understanding and intent that these instruments are “only to constitute grants of public servitudes ...”
Focusing attention on the public policy (there was no need for the Parish to obtain fee ownership), the lack of consideration, stipulations pertaining to the use of the strips of land for road purposes only and the clearly expressed intent of the parties, we conclude that these stipulations are inconsistent with the idea that ownership was intended to be conveyed to the Parish; rather, they indicate strongly that a right of passage or servitude was intended to be given.
The intent of the dedications can be comfortably known from the deeds, but if ambiguous, the extrinsic evidence consisting primarily of the Resolutions and Parish Engineer’s letter make clear the intent to give only a servitude.

The 1983 Resolution

The Caddo Parish 1983 resolution states that “Caddo Parish does hereby waive all present and future claims to fee title and to mineral rights relating to the property described in such instruments.”
In State, Dept. of Transp. & Development v. Scramuzza, 96-1796 (La.4/8/97), 692 So.2d 1024, the supreme court held:
Accordingly, we hold that a formal act of revocation is necessary to revoke a statutory dedication under La. R.S. 48:701. This is consistent with the view expressed by Professor Yiannopoulos that “[w]hen the public owns the land on which 112roads and streets are built, as in the case of a formal or statutory dedication, the public interest may be terminated only by a formal act of the parish or municipal authorities.” Yiannopou-los, Civil Law Treatise, Property, Vol. 2, Sec. 104, p. 227 (1980). This view is also consistent with the numerous courts of appeal that have held that a formal act of revocation is necessary to revoke a statutorily dedicated street.
State v. Scramuzza, supra, does not specifically state that an ordinance is required, only a formal act. Courts have often given binding effect to resolutions, as in Jaenke v. Taylor, 160 La. 109, 106 So. 711 (1926); Gatson v. Bailey, 39,835 (La.App.2d Cir.06/29/05), 907 So.2d 859; Torrance v. Caddo Parish Police Jury, 119 So.2d 617 (La.App. 2d Cir.1960); and Jeffries v. Police Jury of Rapides Parish, 53 So.2d 157 (La.App. 2d Cir.1951). Thus, the 1983 resolution was a formal act sufficient to relinquish the Parish’s alleged and contested fee ownership and mineral rights to the strips of land in favor of a servitude. As stated, the Parish had no need of fee ownership. The Parish did not give up *772 these heavily used roads. They maintained the right of passage. The resolution simply recognized “where the dedication instruments contained statements that the property was to be used for public road purposes only and where the instruments cited no financial consideration in favor of the grantors, shall be henceforth considered by Caddo Parish only to constitute grants of public servitudes and rights-of-way.”

Conclusion

For the reasons set forth above, we reverse that portion of the trial court’s judgment in Webb, et al. v. Franks Investment Co., et al. (# 47,321-CA) granting partial summary judgment in favor of Franks Investment Company, L.L.C.; Twin Cities Development, L.P.; Chesapeake Louisiana, L.P.; and the Parish of Caddo. Likewise, we reverse that portion of the trial court’s judgment in Allen, et al. v. Chesapeake Louisiana, L.P., et al. (# 47,322-CA) granting partial summary judgment in favor of Eric W. Allen, et al.; and the Parish of Caddo.
We reverse that portion of the trial court’s judgment in Webb, et al. v. Franks Investment Co., et al. (# 47,321-CA) denying the motions for partial summary judgment filed by John Creighton Webb, et al.; and Petrohawk Properties, L.P. and grant partial summary judgment in their favor. We reverse that portion of the trial court’s judgment in Allen, et al. v. Chesapeake Louisiana, L.P., et al. (# 47,322-CA) denying the motion for partial summary judgment filed by Chesapeake Louisiana, L.P., et al. and grant partial summary judgment in their favor.
In each case, all costs are to be paid by appellees.
We remand the consolidated cases to the trial court for further proceedings. REVERSED, RENDERED, AND REMANDED.
CARAWAY, J., concurs with written reasons.
MOORE, J., dissents and assigns written reasons.