GUIDRY, Justice.
hln this disavowal action, the district court granted summary judgment in favor of the plaintiff, Derek Alan Pociask, and allowed him to disavow paternity of the minor child, J.M. The appellate court reversed and rendered judgment in favor of the defendant, Kere Moseley, finding the plaintiffs action was prescribed under Article 189 of the Civil Code of Louisiana, and dismissing the action with prejudice. We granted the plaintiffs application for supervisory writs, and for the reasons set forth below, we reverse the court of appeal’s decision and reinstate the judgment of the district court.
FACTS AND PROCEDURAL HISTORY
Kera Moseley and Derek Pociask were married on October 11, 1997, in New Orleans. One child, E.P., was born of the marriage on April 4, 1999. The parties physically separated on April 30, 2006. On March 15, 2007, Ms. Moseley gave birth to another child, J.M. Following a hearing on Ms. Moseley’s rule to show cause on May 14, 2007, the district court rendered a judgment of divorce. On July 15, 2008, Mr. Pociask was notified by the State of Louisiana that Ms. Moseley had asserted he is the father of J.M.
| ¡.Thereafter, on August 19, 2008, Mr. Pociask, hereinafter “the plaintiff,” filed a petition to disavow paternity of J.M. Ms. Moseley, hereinafter “the defendant,” responded by filing a peremptory exception of prescription. In her exception, the defendant asserted that, pursuant to La. Civ. Code art. 189, the plaintiff did not file his petition to disavow paternity within one year of J.M.’s birth.[1] Following a hearing, the district court signed a judgment overruling the exception of prescription. On January 20, 2011, the parties entered into a consent judgment, whereby the district court ordered that J.M. submit to a DNA test within ten days. The results of the DNA test revealed that the plaintiff was not the biological father of J.M.
On July 21, 2011, the plaintiff moved for summary judgment under La.Code Civ. Proc. art. 966, asserting that, because he is not the biological father of J.M., he is entitled to summary judgment granting his petition and formally finding that he is not *536 the father of J.M. The defendant countered with her own motion for summary judgment alleging the plaintiff cannot avail himself of the exception to the time limitation set forth in the second paragraph of La. Civ.Code art. 189. She claimed the parties did not live separately and apart continuously during the three hundred days immediately preceding the birth of J.M. The defendant alleged the plaintiff had admitted to returning to the matrimonial domicile in New Orleans on the weekend of May 25, 2006, spending at least one night at the domicile while the |,.¡defendant was present, and that the defendant visited the plaintiff and E.P. in Pennsylvania, at the plaintiffs residence, in June of 2006.
At the hearing on the exception of prescription conducted on October 18, 2010, it was stipulated that the plaintiff, who resided in Pennsylvania, made a visit to New Orleans on or about May 25, 2006, to attend the wedding of his brother. While there, he stayed at the former matrimonial domicile for one night, possibly two; the defendant was present in the home for one night. It was also stipulated that the defendant in June 2006 made a “journey” to Pennsylvania, where the plaintiff lived, to pick up or drop off E.P. It was disputed whether she stayed at the plaintiffs residence in Pennsylvania.
A hearing on the parties’ motions for summary judgment was conducted on October 17, 2011. The defendant conceded the plaintiff was not the biological father of J.M., given the results of the DNA test, and admitted the plaintiff had had a vasectomy prior to the pregnancy at issue. The defendant asserted that Louisiana recognizes dual paternity; that the impossibility of the child not being the plaintiffs biological child is not a relevant inquiry; that the plaintiff knew about the birth of the child and that it was not his, but failed to file his petition within one year of the child’s birth; and that the plaintiff could not avail himself of the suspension exception to the time limitation in Article 189 because he had only lived separate and apart from the defendant continuously for 292 days, given the one night they were present together in the matrimonial domicile in May 2006.
Following the hearing, the district court granted summary judgment in favor of the former husband. In its oral reasons given at the hearing, the district court found that the one night stay at the matrimonial domicile in May 2006 did not interrupt the requisite period of time for the parties to be living separate and apart | continuously. The district court reasoned that the “living separate and apart continuously” language in the article on bringing the disavowal action should be read in pari materia with similar language found in the articles on divorce, La. Civ.Code arts. 102 and 103.[2] The court noted that, under the jurispru *537 dence interpreting the divorce articles, short visits did not interrupt the time period in order to obtain a final divorce. On May 14, 2012, pursuant to a remand order from the court of appeal, the district court signed an amended judgment granting summary judgment in favor of the former husband and ordering that he shall be allowed to disavow paternity of the minor child, J.M.
The court of appeal reversed the district court’s ruling and rendered judgment in favor of the defendant, finding the plaintiffs disavowal action was prescribed. Pociask v. Moseley, 12-0440 (La.App. 1 Cir. 12/28/12), 2012 WL 6738168 (unpublished). Citing our decision in Gallo v. Gallo, 03-794, pp. 7-8 (La.12/3/03), 861 So.2d 168, 173-74, the court reasoned it must strictly apply the articles governing disavowal actions. The court of appeal, strictly construing the phrase “living separate and apart continuously” for three hundred days immediately preceding the birth of the child, reasoned that the two visits between the parties resulted in the parties not living separate and apart continuously for the three hundred days immediately preceding the |Bbirth of the minor child. Therefore, the court found, the plaintiffs claim did not fall within the exception to the general one-year time limitation for commencing the disavowal action, that is, within one year of the actual or constructive knowledge of the birth of the child.
We granted the plaintiffs writ application to review the correctness of the court of appeal’s ruling. Pociask v. Moseley, 13-0262 (La.4/1/13), 110 So.3d 590.
DISCUSSION
The parties filed opposing motions for summary judgment. The defendant properly raised in her motion the defense of prescription, and thus bears the burden of proof at trial on the peremptory exception. Wells v. Zadeck, 11-1232, p. 7 (La.3/30/12), 89 So.3d 1145, 1149; Hogg v. Chevron USA, Inc., 09-2632, p. 6 (La.7/6/10), 45 So.3d 991, 997. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed. Wells v. Zadeck, p. 7, 89 So.3d at 1149. A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. Smitko v. Gulf South Shrimp, Inc., 11-1566, p. 7 (La.7/2/12), 94 So.3d 750, 755; Samaha v. Rau, 07-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882-83.
The burden of proof remains with the movant; however, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mov-ant’s burden on the motion does not require | fihim to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. La. Code Civ. Proc. art. 966(C)(2). Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. Id.
The motions for summary judgment at issue here arise in the context of a petition for disavowal of paternity. The defendant has asserted a defense of prescription, asserting the plaintiffs disavowal action was not filed within one year of the birth of the child, nor did the parties live separate and apart continuously for three hundred days *538 immediately preceding the birth of the child, such that the suspensive exception to the one-year limitation in La. Civ.Code art. 189 is similarly unavailing to the plaintiff. The issue thus presented in the instant case is whether the former husband timely filed his petition for disavowal of paternity.
“The sources of law are legislation and custom.” La. Civ.Code art. 1. In Louisiana, legislation is the superior source of law. La. Civ.Code art. 1, cmts. (a) and (c). Legislation cannot be abrogated by custom. La. Civ.Code art. 3. Therefore, the starting point of our analysis is with the codal articles to determine the status of the parties and their reciprocal rights and obligations. Gallo, 03-794, p. 6, 861 So.2d at 173.
It is a longstanding principle of our civil law tradition that the husband of the mother is presumed to be the father of a child born either during the marriage or within three hundred days from the date of the termination of the marriage. La. Civ.Code art. 185. However, the husband may disavow paternity of the child by clear and convincing evidence that he is not the father, though the testimony of the |7father must be corroborated by other evidence. La. Civ.Code art. 187. The petition for disavowal of paternity must be brought within the time limitations set forth in La. Civ.Code art. 189, which provides as follows:
The action for disavowal of paternity is subject to a liberative prescription of one year. This prescription commences to run from the day the husband learns or should have learned of the birth of the child.
There is an exception suspending this time limitation contained in the second paragraph of La. Civ.Code art. 189:
Nevertheless, if the husband lived separate and apart from the mother continuously during the three hundred days immediately preceding the birth of the child, this prescription does not commence to run until the husband is notified in writing that a party in interest has asserted that the husband is the father of the child.
In Gallo, we explained that the policy embodied in the restrictive provisions of the Louisiana Civil Code dealing with the action to disavow is “to protect innocent children, born during marriage, against scandalous attacks upon their paternity by the husband of the mother, who may be seeking to avoid paternal obligations to the child.” Gallo, p. 7, 861 So.2d at 173 (citing Williams v. Williams, 230 La. 1, 7-8, 87 So.2d 707, 709 (1956)). Thus, “the traditional and historical position of Louisiana jurisprudence was to zealously guard and enforce the presumption of paternity” created by the Civil Code. Id. (citing Pounds v. Schori, 377 So.2d 1195, 1200 (La.1979)). “The fundamental ends achieved by such court action were preservation of the family unit, avoidance of the stigma of illegitimacy, and aversion to the disinheritance that resulted from a successful disavowal action.” Id. Accordingly, we found the public interest in dispelling doubts as to legitimacy demanded the establishment of a relatively short time limitation for bringing challenges, a consideration which had contributed to the |sfinding in Pounds v. Schori, that the period of time in which a husband must file a suit for disavowal to defeat the presumption of his paternity is peremptive. Id., p. 8, 861 So.2d at 174.
In 1999, twenty years after Pounds v. Schori, this court noted that once the bonds of matrimony are dissolved by divorce, the state’s interest in preserving the marital family wanes. See T.D. v. M.M.M., 98-0167, p. 4 (Knoll, Justice, concurring) (La.3/2/99), 730 So.2d 873, 878-879. We observed in Gallo that, “Although some rights spring from the disso *539 lution of a lawful marriage, today’s realities are that illegitimacy and ‘broken homes’ are neither rarities nor stigmas as in the past.” Id. In Gallo, we pointed to then-recent changes in this area of the law, which included legislation making the presumption regarding paternity rebuttable instead of conclusive; Louisiana’s recognition of dual paternity; and the acceptance of DNA testing as conclusive scientific evidence of biological paternity. Id. (citations and footnotes omitted). Since our 2003 decision in Gallo, these legislative changes have continued, as following a fourteen-year project of the Louisiana Law Institute culminating in the 2005 amendments to the law of filiation, the legislature inter alia changed the time limitation for instituting a disavowal action from the more rigorous peremptive term recognized in Pounds v. Schorl to an explicitly prescriptive one. Acts 2005, No. 192, Sect. 1, eff. June 29, 2005; La. Civ.Code art. 189, cmt. (a); see also Katherine Shaw Spaht, Who’s Your Momma, Who are Your Daddies?: Louisiana’s New Law of Filiation, 67 La. L.Rev. 307 (2007); Rachel L. Kovach, Comment, Sorry Daddy — Your Time Is Up: Rebutting the Presumption of Paternity in Louisiana, 56 Loy. L.Rev. 651(2010).
A similarly liberalizing legislative change was effected in the second paragraph of La. Civ.Code art. 189, to suspend the time period for filing the |9disavowal action if the husband continuously lived separate and apart from the mother during the three hundred days immediately preceding the birth of the child. See Acts 1999, No. 790, Sect. 1; Spaht, 67 La. L.Rev. at 314. No such suspension of prescription was provided for until the 1999 amendment, which incorporated the living separate and apart language long used in the codal articles governing divorce. See La. Civ.Code arts. 102 and 103. This suspension for filing the disavowal action was incorporated into the Law Institute’s revision of Article 189 and has been continued in the 2005 legislation. See Spaht, 67 La. L.Rev. at 314. The professed intent behind these changes in the law of filiation is to bring legal and biological paternity into closer association. Id.[3]
*540 With this history in mind, we turn to the issue at hand: whether the overnight visit between the parties in this ease interrupted the three-hundred day requirement for the parties to live separate and apart continuously. The plaintiff argues the | mphrase “living separate and apart continuously” is a term of art within the family law context which has a long and settled interpretation for obtaining a “no fault” divorce under La. Civ.Code arts. 102 or 103, that is, no longer living openly as husband and wife. See Hava v. Chavigny, 147 La. 330, 84 So. 892 (1920) (recognizing that couples could live under the same roof for weeks or months and yet still be deemed “living separate and apart”). The plaintiff argues that in applying this requirement, Louisiana courts have recognized impermanent or intermittent visits, or even sexual intercourse, between separated spouses will not serve to interrupt the continuity of a legal separation. See Lemoine v. Lemoine, 97-1626 (La.App. 3 Cir. 7/1/98), 715 So.2d 1244 (evidence that husband and wife went on several trips together and had intermittent sexual relations during the time period after filing for divorce was insufficient to establish the parties had reconciled, where husband rented separate residence, never moved back into the marital home, never stayed in the marital home for more than a few days, and stated that he had no intent to resume the marriage). The plaintiff argues the jurisprudence establishes that, to prove reconciliation interrupting the continuity of separation, the overall circumstances must show a mutual intention by the parties to voluntarily resume their marital relationship. See Millon v. Millon, 352 So.2d 325 (La.App. 4th Cir.1977). Here, the plaintiff argues, there was no evidence in the record that the parties had reconciled or even had attempted to reconcile. Moreover, to obtain the divorce, the defendant attested that the parties had lived separately and apart continuously from the plaintiff from April 30, 2006, through May 14, 2007, the day of the hearing on the rule to show cause. Thus, the plaintiff argues, the exception in Art. 189 applies, and his petition was timely filed within one year of being given notice in writing by the State that a party in interest had asserted that he is the father of the child.
|nThe defendant on the other hand argues there remains a strong public policy in Louisiana to favor the legitimacy of children, citing Gallo and Drew. Thus, she contends the court of appeal properly applied a strict construction of the prescription article on disavowing paternity. She further contends the appellate court properly declined to read the prescription article, La. Civ.Code art. 189, in pari materia with the articles on divorce, La. Civ.Code arts. 102 and 103, because the purposes and public policy considerations behind disavowal actions and divorce actions are vastly different. The defendant contends the provisions on paternity and divorce do not pertain to the same subject matter and the language therein should be interpreted as having the meaning that best conforms to the purpose of the law, citing La. Civ. Code art. 10.
The fundamental question in all cases of statutory interpretation is legislative intent and the ascertainment of the reason or reasons that prompted the legislature to enact the law. In re: Succession of Boyter, 99-0761, p. 9 (La.1/7/00), 756 So.2d 1122, 1128. The rules of statutory construction are designed to ascertain and enforce the intent of the legislature. Id.; Stogner v. Stogner, 98-3044, p. 5 (La.7/7/99), 739 So.2d 762, 766. Legisla *541 tion is the solemn expression of legislative will, and therefore, interpretation of a law involves primarily a search for the legislature’s intent. La.Rev.Stat. § 1:4 (2004); La. Civ.Code art. 2; Lockett v. State, Dept. of Transp. and Development, 03-1767, p. 3 (La.2/25/04), 869 So.2d 87, 90. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La.Civ.Code art. 9; Lockett, 03-1767 at p. 3, 869 So.2d at 90-91; Conerly v. State, 97-0871, p. 3-4 (La.7/8/98), 714 So.2d 709, 710-11.
1 i2The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting it. Boyter, 99-0761 at p. 9, 756 So.2d at 1129; Stogner, 98-3044 at p. 5, 739 So.2d at 766. The statute must, therefore, be applied and interpreted in a manner that is consistent with logic and the presumed fair purpose and intention of the legislature in passing it. Boyter, 99-0761 at p. 9, 756 So.2d at 1129. This is because the rules of statutory construction require that the general intent and purpose of the legislature in enacting the law must, if possible, be given effect. Id.; Backhus v. Transit Cas. Co., 549 So.2d 283, 289 (La.1989). It is presumed the intent of the legislature is to achieve a consistent body of law. Stogner, 98-3044 at p. 5, 739 So.2d at 766.
La. Civ.Code art. 13 provides that, where two statutes deal with the same subject matter, they should be harmonized if possible. Kennedy v. Kennedy, 96-0732, 96-0741, p. 2 (La.11/25/96), 699 So.2d 351, 358 (on rehearing). It is a well-settled rule of statutory construction that all laws dealing with the same subject matter must be construed in pari materia. La. Civ. Code art. 17; Reed v. Washington Parish Police Jury, 518 So.2d 1044, 1047 (La.1988). Statutes are in pari materia— pertain to the same subject matter — when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object. 2B Sutherland Stat. Const. § 51:3, p. 222 (7th ed.2012).
We' hold that the phrase “living separate and apart continuously” in the divorce articles and the disavowal action article found in our Civil Code should be read in pari materia. The codal articles on divorce and those on filiation and disavowal of paternity are found in Book 1 of our Civil Code, entitled “Of 11?,Persons,” and clearly relate or pertain to the same class of persons, that is, families in some state of flux, and to the same or strikingly similar objects, that is, the dissolution of marital and filial relationships. Compare State in Interest of Johnson, 465 So.2d 134 (La.App. 1st Cir.1985) (termination and abandonment statutes are similar because they both deal with the termination of parental rights, though for different reasons), aff'd, 475 So.2d 340 (La.1985). Although Articles 102 and 103 apply the subject language in setting forth grounds for divorce without fault, and Article 189 applies the subject language in delineating a time limitation for liberative prescription of the disavowal action, they both involve the husband and wife living separate and apart continuously in the context of a dissolving marital or filial relationship. Further, as in this case, a disavowal action is most often precipitated by a divorce between the mother and the presumed legal father. Simply stated, but for the marriage, there would be no disavowal action under Art. 189. Therefore, it is logical to *542 interpret a provision or language in the disavowal article similarly to the same provision or language in the divorce articles.
Finally, the legislature, when it amended Art. 189 in 1999 and reenacted it in 2005, was certainly aware of the phrase “living separate and apart continuously” as used in the divorce articles, which language had been long and consistently interpreted and applied by the courts of this state such that the phrase has acquired a “peculiar and appropriate meaning” in the area of family law.[4] “Technical words 114and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.” La.Rev.Stat. 1:3. There is no indication, and the parties have not directed us to any legislative history, that, when the legislature adopted the subject phrase found in the divorce articles for use in the disavowal action article — first in 1999 and then again in 2005, it intended a different meaning to apply. While we continue to adhere to our policy of strictly construing the codal provisions dealing with filiation, we cannot ignore either the context of the known terms and phrases employed by the legislature in creating an exception to the running of the time limitation for a disavowal action or the trend of the legislative changes in this area of the law.
Accordingly, reading La. Civ.Code art. 189 in pan materia with La. Civ.Code arts. 102 and 103, we find the district court correctly concluded that one overnight visit in the former matrimonial domicile when both parties were present did not interrupt the three-hundred-day time period required for the former husband to live separate and apart continuously from the mother to avail himself of the exception to the running of prescription set forth in Art. 189. There is no dispute the parties maintained separate residences in different states commencing from their separation on April 30, 2006, when the plaintiff moved to Pittsburgh, Pennsylvania, through the date of the birth of the child on March 15, 2007, 319 days later. The mother, in obtaining the "divorce, attested she had lived separate and apart from the plaintiff from April 30, 2006, through the date of the divorce on May 14, 2007. Aside from the one night visit on or about May 25, 2006, in which the parties were present in the former matrimonial domicile, there is no evidence the parties did not hold themselves out to the community as living separate and apart. There are no allegations of cohabitation, sexual relations or reconciliation 11fithat might serve to defeat or interrupt the requirement of living separate and apart for three hundred days. Thus, we find no error in the district court’s determination that the parties had lived separate and apart continuously for the *543 three hundred days immediately preceding the birth of the child.
Accordingly, the district court properly denied the defendant’s motion for summary judgment and granted the plaintiffs motion for summary judgment, allowing him to disavow paternity of the minor child J.M. The plaintiff established that he had lived separate and apart continuously from the mother for the three hundred days immediately preceding the birth of the child on March 15, 2007. He was first given notice on July 15, 2008, that the mother had asserted he was the father of J.M. and that the mother was seeking child support. The plaintiff timely filed his disavowal petition on August 19, 2008, well within the one-year time limitation provided for in Art. 189. Because there is no dispute that the plaintiff is not the biological father of the child, summary judgment in favor of the plaintiff was warranted.
CONCLUSION
After reviewing the law and jurisprudence, we hold the court of appeal erred in not reading La. Civ.Code art. 189 in pari materia with La. Civ.Code arts. 102 and 103 before determining whether the husband and mother had lived separate and apart continuously for the three hundred days immediately preceding the birth of the child. The district court correctly found that one overnight visit, absent any allegation of cohabitation, sexual relations, or reconciliation, did not serve to interrupt the three-hundred day period. Thus, the district court properly denied the defendant’s motion for summary judgment and granted summary judgment in favor of the plaintiff, Derek Alan Pociask, and allowed him to disavow paternity of [1fithe minor child, J.M. For the reasons set forth above, we reverse the court of appeal’s decision and reinstate the judgment of the district court.
REVERSED; DISTRICT COURT’S JUDGMENT REINSTATED

. La. Civ.Code art. 189 provides as follows:
The action for disavowal of paternity is subject to a liberative prescription of one year. This prescription commences to run from the day the husband learns or should have learned of the birth of the child.
Nevertheless, if the husband lived separate and apart from the mother continuously during the three hundred days immediately preceding the birth of the child, this prescription does not commence to run until the husband is notified in writing that a party in interest has asserted that the husband is the father of the child.

. La. Civ.Code art. 102 provides as follows:
Except in the case of a covenant marriage, a divorce shall be granted upon motion of a spouse when either spouse has filed a petition for divorce and upon proof that the requisite period of time, in accordance with Article 103.1, has elapsed from the service of the petition, or from the execution of written waiver of the service, and that the spouses have lived separate and apart continuously for at least the requisite period of time, in accordance with Article 103.1, prior to the filing of the rule to show cause.
The motion shall be a rule to show cause filed after all such delays have elapsed.
La. Civ.Code art. 103 provides in pertinent part as follows:
Except in the case of a covenant marriage, a divorce shall be granted on the petition of a spouse upon proof that:
(1) The spouses have been living separate and apart continuously for the requisite period of time, in accordance with Article 103.1, or more on the date the petition is filed....

. As previously stated, a complete revision of the law concerning filiation was enacted in 2005. See State, Dept. of Social Services, Office of Family Support ex rel. K.B.D. v. Drew, 46,337 (La.App. 2 Cir. 6/29/11), 70 So.3d 1011, 1013. The Chair and Reporter of the Persons committee of the Louisiana Law Institute commented on the revision in 2005 and 2006 of the articles governing proof of filiation:
One clearly stated objective of the revision of the law of filiation: to more closely align biological and legal paternity. Yet, the series of articles devoted to the mother’s contestation action recognizes that this alignment must pose the least possibility of potential harm to the child and the family. The objective of aligning biological and legal paternity principally reflects dissatisfaction with the historical application of the presumption that the husband of the mother is the father of the child conceived or born during marriage. The presumption had become virtually irrebuttable. Even before the Law Institute revision passed in 2005, legislative changes to the time period for instituting a disavowal action markedly liberalized the rebuttal of the presumption of the husband's paternity. The liberalizing legislative change that suspended the time period if the child was born more than three hundred days after a continuous physical separation of the mother and her husband was incorporated into the Law Institute's revision. In addition, the revision took an additipnal liberalizing step by converting what was arguably a peremptive time period for instituting the action into an explicitly prescriptive period, subject to both suspension and interruption. Thus, the potential for more closely aligning legal and biological paternity exists by virtue of the continued liberalization of the rules regulating the disavowal action by the husband and, for the first time, extending an action of contestation to the mother of the child.
*540 Spaht, 67 La. L.Rev. at 314.

. "Living separate and apart” for purposes of obtaining a final divorce means , the parties live apart in such a manner that those in the community are aware of the separation. Lemoine v. Lemoine, 97-1626 p. 8 (La.App. 3 Cir. 7/1/98), 715 So.2d 1244, 1248 (citing Billac v. Billac, 464 So.2d 819- (La.App. 5 Cir.1985); Quinn v. Brown, 159 La. 570, 105 So. 624 (1925); Arnoult v. Letten, 155 La. 275, 99 So. 218 (1924); Hava v. Chavigny, 147 La. 330, 84 So. 892 (1920)). Reconciliation is a defense that may be asserted to extinguish a cause of action for divorce pursuant to La. Civ.Code art. 102. La. Civ.Code art. 104; Lemoine, pp. 9-10, 715 So.2d at 1248. Reconciliation occurs when there is a mutual intent to reestablish the marital relationship on a permanent basis. Woods v. Woods, 27,199 (La.App. 2 Cir. 8/23/95), 660 So.2d at 135. The motives and intentions of the parties to reestablish the marital relationship are questions of fact determined by the trial court from the totality of the circumstances. Id.