STEWART, J.
hThe res nova issue presented in this appeal concerns whether annexation by the City of Shreveport (“the city”) of Cad-do Parish territory, which included dedicated public roads, transferred ownership of the public roads and underlying acreage to the city so that the city, rather than Caddo Parish, is entitled to the proceeds of mineral production attributable to that acreage. On competing summary judgment motions, the trial court concluded that the city did not acquire ownership of the dedicated public roads upon annexation. For reasons explained in this opinion, our de novo review leads this court to conclude otherwise and hold as a matter of law that annexation by the city of territory in which public roads are located had the effect of transferring any parish ownership of roads and underlying acreage to the city.
FACTS
Chesapeake Operating, Inc. (“Chesapeake”), filed four separate concursus actions naming the city and the Caddo Parish Commission (“the parish”) as defendants to determine whether the city or the parish is entitled to receive the royalties from mineral production from gas wells operated by Chesapeake and located in Sections 6, 7, 8, and 17 all within Township 16 North, Range 14 West. Both the city and parish executed mineral leases covering the disputed public roads. By instrument dated August 12, 2009, the State Mineral and Energy Board (“the board”) granted on behalf of the parish as lessor a mineral lease in favor of Merit Energy Services covering 158.58 acres. By instrument dated October 14, 2009, the board granted on behalf of the city as lessor a mineral lease in favor of Cypress Energy ^Corporation covering approximately 478.288 acres. By virtue of their leases, both the parish and the city claimed entitlement to the royalties attributable to all acreage underlying public roads, streets, and highways in the covered sections. Exhibits listing the disputed roads, streets, and highways at issue are attached to each concursus petition and show that the total acreage in dispute is less than 80 acres. The four concursus actions were consolidated by order of the trial court on March 12, 2012.
The conflicting claims by the parish and city resulted from the city’s annexation of parish property, which the city contends transferred ownership, including mineral rights, of public roads and roadbeds within *540 the annexed territory. The parish asserts that the property in dispute was dedicated to public use prior to the city’s annexation, which did not transfer ownership of the roads and roadbeds from it to the city.
EXCO Operating Company, LP (“EXCO”), the party to whom Cypress had assigned its interest in the city’s lease, intervened in the concursus proceedings in alignment with the interests of the city.[1] On July 18, 2012, EXCO filed a motion for summary judgment to have the city declared the owner of the disputed property.[2] Among its exhibits, EXCO included conflicting attorney general opinions, discussed infra, addressing the effect of annexation. EXCO also included a legal memorandum by Christopher J. Tyson, a law professor, analyzing Louisiana annexation law.
[¡¡Following EXCO’s lead and adopting its arguments, the city filed its own motion for summary judgment to have it declared the owner of the proceeds of mineral production attributable to all the dedicated roadways at issue in the consolidated con-cursus actions. Among its exhibits, the city included the various annexation ordinances, along with uncertified copies of various dedications of the roads at issue, which Chesapeake had provided to it in discovery.
On September 28, 2012, Chesapeake and the parish filed a cross-motion for a partial summary judgment declaring that annexation by the city did not transfer ownership of the roadbeds and their appurtenant mineral rights. In their motion, they noted that this court had under consideration a matter concerning whether a formal dedication to public use of land for a road transferred ownership or a servitude of use and that a ruling by this court might affect some of the tracts involved in this dispute.[3] However, they maintained that the fundamental issue of whether annexation transfers ownership must still be decided.
In their motion, Chesapeake and the parish also sought to have EXCO’s Tyson memorandum stricken as an unsigned, unsworn, and insufficient evidence for summary judgment purposes. Thereafter, EXCO filed a motion to supplement its motion for summary judgment with Tyson’s curriculum vitae and affidavit identifying him as a professor of local government and property law at LSU Law Center.
[/The trial court heard arguments on the competing motions on October 17, 2012, and rendered a written opinion on November 29, 2012. The trial court framed the issues before it concerning the consequences of annexation as whether, upon annexation, the city acquired ownership of the dedicated public roads along with the appurtenant mineral rights within the annexed geographical area or whether the city merely enlarged its boundaries without acquiring ownership of the public roads and mineral rights. The trial court concluded that the city did not show as a matter of law that it acquired ownership of *541 the public roads at issue through annexation. Because the parish did not convey ownership of public roads when it agreed to permit annexation of territory encompassing the public roads at issue, the trial court ruled that the parish, not the city, was entitled to execute the mineral leases and receive the proceeds of mineral production attributable to the disputed properties.
Accordingly, the trial court rendered a judgment on December 19, 2012, that denied EXCO’s and the city’s motions for summary judgment, denied EXCO’s motion to supplement, and granted the cross motion for partial summary judgment by the parish and Chesapeake. As provided by La. C.C.P. art.1915, the trial expressly designated this a final judgment for purposes of immediate appeal. Costs were assessed equally between Chesapeake and EXCO.
Following the rendition of the final judgment, the city filed a motion for a new trial and a second motion for summary judgment. The city argued that, under this court’s then recently rendered decision in Webb, supra, the trial court’s judgment was contrary to law. The city sought to have the trial |scourt revisit its prior ruling in light of Webb, supra, and to differentiate between those roads that were the subjects of statutory and formal dedications.
Chesapeake, EXCO, and the parish opposed the city’s motion for new trial and second motion for summary judgment. Their various oppositions noted that' Webb, supra, which did not address annexation, was not contrary to the trial court’s limited ruling on the effect of annexation, that the pendency of the Webb matter before this court had been disclosed to the trial court, and that the trial court had not been asked to opine on factual matters concerning the exact acreage and roads in dispute. After hearing arguments on February, 25, 2013, the trial court denied the city’s motion for a new trial and found its second motion for summary judgment to be moot.
Both EXCO and the city have appealed the denial of their motions for summary judgment and the granting of the motion for partial summary judgment in favor of Chesapeake and the Parish. Additionally, the city appeals the denial of its motion for a new trial and the ruling that its second motion for summary judgment is moot.
DISCUSSION
The motions for summary judgment filed by EXCO and the city and the cross motion for partial summary judgment filed by Chesapeake present the res nova issue concerning the effect of annexation on the ownership of public roads and the land upon which they are built. This is a question of law for which summary judgment is appropriate. Bellard v. American Cent. Ins. Co., 2007-1335 (La.4/18/08), 980 So.2d 654; Franklin v. Camterra Resources Partners, Inc., 48,021 (La.App.2d Cir.5/22/13), 123 So.3d 184. A judgment that grants or denies a motion for summary judgment is subject to a de novo review by the appellate court. Dortch v. Rollins, 47,525 (La.App.2d Cir.4/10/13), 113 So.3d 443.
The issue presented also involves interpretation of annexation statutes. Statutory interpretation involves a search for the legislature’s intent in enacting the law. Pociask v. Moseley, 2013-0262 (La.6/28/13), 122 So.3d 533. When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written without further interpretation in search of the legislative intent. La. C.C. art. 9; La. R.S. 1:4; Pociask, supra. Laws on the same subject matter must be construed in reference to each other. La. C.C. art. 13; Pociask, *542 supra. A law’s meaning and intent “is determined by considering the law in its entirety and all other laws on the same subject matter and placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting it.” Pociask, 2013-0262, p. 12, 122 So.3d at 541, and cases cited therein.
Public roads are ones subject to public use, and the public may own the land on which the road is built or merely have the right to use it. La. C.C. art. 457. The record indicates that the roadbeds at issue were dedicated for public use through both formal and statutory dedications. Statutory dedication vests full ownership in the public authority, whether a municipality, parish, or the state, depending on where the road is located. Garrett v. Pioneer Production Corp., 390 So.2d 851 (La.1980). However, a subdivider may reserve ownership of streets and public places and grant only a servitude of use to the public. St. Charles Parish School Bd. v. P & L Inv. Corp., 95-2571 (La.5/21/96), 674 So.2d 218.[4] Likewise, a formal dedication transfers ownership of the property to the public unless ownership is expressly or impliedly retained, in which case the public acquires a servitude of use. Id.
Recently, this court in Webb, supra, held that formal dedications executed in 1913, 1914, 1924 and 1928 on forms preprinted by the Caddo Parish Police Jury and stating that the property was dedicated to the public for a public road granted only a servitude to the parish, not fee title. The court reasoned that the parties historically treated the dedications as servitudes, no compensation had been given, the dedications had no language granting fee title to the parish, and the property was dedicated for a limited purpose. Additionally, the court took note of a resolution passed by Caddo Parish Police Jury in 1983 by which it waived claims to fee title and mineral rights in property dedicated for road purposes only and where the dedication instruments indicated no financial consideration was given to the grantors.
Unlike in Webb, supra, this matter is not a dispute between private persons and the parish. Moreover, the issue of whether any specific dedication conveyed fee title of the land to the parish was not before the trial court and is not before us for review. Rather, the narrow issue before us is the effect of the city’s annexation of public roads and roadbeds owned by the parish.
| ¡Annexation is the procedure by which a municipality extends its corporate limits. This may occur by petition and election as provided by La. R.S. 33:151 through 33:161, or by ordinance as provided by La. R.S. 33:171 through R.S. 33:180. The effect of annexation on territory annexed by a municipality is best explained in La. R.S. 33:160(A), which states that the annexed land shall
be included in and constitute part of the corporate limits of the city or town and subject to the jurisdiction, control, and authority of the municipal authorities of the city or town as fully, and to all intents and purposes as if, the same had been originally included in the corporate limits thereof.
Though this language is not repeated in other provisions addressing annexation, we find that regardless of the procedure by which annexation occurs the effect is the same as stated in La. R.S. 33:160(A). Land annexed by a municipality becomes subject to the jurisdiction, authority, and control of the municipality.
*543 Pertinent to the issue at hand is La. R.S. 38:224, which states:
Whenever any municipality annexes territory by any of the methods provided for in this Chapter it shall also annex and maintain any parish road which is within the territory proposed to be annexed, but only insofar as the road is within the municipality. Where the road is adjacent to but not within the annexed territory the municipality and the parish shall equally share the maintenance of the road. Any annexation contrary to the provisions of this Section shall be invalid. The provisions of this Section shall not apply to any parish in which there is a city-parish form of government.
While La. R.S. 33:224 does not expressly refer to a transfer of ownership, it does require that parish roads be included in the annexation, and it places the burden of maintaining such roads on the municipality. Thus, the municipality becomes responsible for the road now included in its corporate limits. Moreover, as to the effect of annexation discussed above, the lands |sunderlying the parish roads shall be included within the corporate limits of the municipality and be subject to the jurisdiction, control, and authority of the municipal authorities the same as other annexed lands.
As provided by La. C.C. art. 477(A), ownership confers “direct, immediate, and exclusive authority over a thing” and allows the owner to “use, enjoy, and dispose of it within the limits and under the conditions established by law.” Public things, such as streets or roads, are owned by the state or its political subdivisions in their capacity as public persons. La. C.C. art. 450. As explained in Comment (b) of La. C.C. art. 450, public things are out of commerce and dedicated to public use, with the public authorities acting as “trustees” for the benefit of public. Considering these articles in light of the annexation provisions discussed above, we are persuaded by EXCO’s argument that public property is acquired and held for the benefit of the public and that when such property is included in territory annexed by a municipality, the ownership of the public property is transferred to the annexing municipality which assumes authority, jurisdiction, and control over the public property.
The parties recognize that there is no jurisprudence directly addressing whether annexation of public roads, meaning roads owned by the political subdivisions in their capacity as public persons, transfers ownership from the parish to the annexing municipality. However, three attorney general opinions have addressed the issue. While such opinions are advisory and not binding, our court recognizes their persuasive authority. Anderson v. Bossier Parish Police Jury, 45,639 (La.App.2d Cir.12/15/10), 56 So.3d10 275; Holley v. Plum Creek Timber Co., 38,716 (La.App.2d Cir.6/23/04), 877 So.2d 284.
The first, La. Atty. Gen. Op. No. 1985-75, involved a dispute over mineral rights between Pointe Coupee Parish and the City of New Roads. After a statutory dedication to public use of all roads and streets within a subdivision located in Pointe Coupee, part of the subdivision was included in a production unit. Some years later, the City of New Roads annexed the subdivision and then sought to obtain the proceeds of mineral production. On the question of whether annexation of the statutorily dedicated subdivision transferred ownership to public property, the attorney general concluded that it did. The opinion cites Garrett v. Pioneer Production Corp., supra, for the rule that “statutory dedication vests full ownership in the municipality, parish, or State of *544 Louisiana, depending upon where the street or road is located.” It then likens this ownership interest to that of a trust with the public authority acting as a trustee exercising control over the property for the public. Discussing annexation, the opinion explains that a municipality assumes control and responsibility over the annexed roads to the exclusion of the parish and that it is the municipality’s assumption of responsibility for the public use of the annexed roads that effects a transfer in ownership or “trustee.” The attorney general concluded that, having assumed authority and responsibility for the annexed area, annexation vested ownership in the City of New Roads to the exclusion of Pointe Coupee.
When asked a few years later whether “a municipality may acquire mineral rights to a parish-owned road upon annexation by the municipality,” the attorney general concluded with little analysis that no provision |n authorizes transfer of ownership by annexation. La. Atty. Gen. Op. No. 1988-529. When asked to reconsider this opinion, the attorney general affirmed it while recognizing “that the issue is far from settled.” La. Atty. Gen. Op. No. 93-155. Citing La. R.S. 38:224, the attorney general noted that it does not address a transfer of ownership, but merely refers to annexation and maintenance. The attorney general did not equate the jurisdiction, control, and authority over annexed lands to ownership.
Though the attorney general twice concluded that a municipality does not acquire mineral rights underlying a parish-owned road when it becomes part of the municipality through annexation, we are persuaded that its initial opinion (No. 1985-75) properly analyzed the issue and reached the correct result.
Citing Akin v. Caddo Parish Police Jury, 234 So.2d 203 (La.App. 2d Cir.1970), writ ref'd, 256 La. 75, 235 So.2d 99 (La.1970), and Riverside Homeowners Ass’n v. City of Covington, 2007-0886 (La.App.1st Cir.4/16/08), 986 So.2d 70, writ denied, 2008-1064 (La.9/26/08), 992 So.2d 985, the parish and Chesapeake argue that jurisprudence has determined that ownership is not transferred by annexation alone. Neither of these cases involved the annexation of a public road.
In the Akin case, which was not an annexation case, residents sought to enjoin the Caddo Parish Policy Jury from proceeding with plans to enlarge the parish courthouse located in Shreveport. After determining that exceptions of no cause of action and no right of action should have been sustained, the appellate court further addressed the merits of the plaintiffs’ claim. The court noted that the city, which was not a party in the case, did 112not assert that it had title to or a right to possess, control, or administer the parish court house. Moreover, the legislation that created the then “Town of Shreveport” excepted from it the authority to dispose of lands belonging to the parish within the town’s limits. Thus, the parish continued to exercise jurisdiction and control over the courthouse, which it possessed and administered in the public’s interest in compliance with its statutory obligation (La. R.S. 33:4713) to maintain a parish courthouse. The court rejected the argument that the creation of the Town of Shreveport transferred public property from the parish to the town. In dicta, and without citing any authority, the court opined that title to public property remains with the governing authority at the time of dedication. While making that declaration without citing any authority, the court further stated that it found no authority upon which it could conclude that the “title or ownership in the public of the streets or alleys is affected or changed *545 from the public supervised and controlled by one governmental agency to another supervised and controlled by a separate governmental agency.” Id. at p. 208-209. As stated, we view this conclusion as dicta and not controlling, particularly since Akin, supra, involved neither annexation, ownership of public roads, nor a dispute over such between the a parish and municipality.
Riverside, supra, involved an effort by a civic association and a group of individuals to enjoin the City of Covington from annexing a portion of a state-owned river bottom and a private property adjacent to the navigable river. The trial court denied the plaintiffs relief and the appellate court affirmed. On the issue of whether the city could annex the state-owned river bottom under La. R.S. 83:180, which governs annexation by ordinance of | island wholly owned by a public body, the appellate court concluded that the city could annex the river bottom. The court reasoned that annexation would neither transfer ownership of the river bottom from the state to the city nor would it limit the state from controlling and leasing encroachments on the riverbed in accordance with La. R.S. 41:1701.[5] Contrary to the arguments of Chesapeake and the parish, this case does not definitively establish that annexation does not transfer ownership of public property. At most, it makes clear that ownership of a state-owned navigable river bottom is not transferred by annexation. The bottoms of natural navigable water bodies are public things owned by the state, not its political subdivisions. La. C.C. art. 450.
From our de novo review of the parties’ motions and for the reasons set forth, we find that annexation by the city of public property, namely public roads and roadbeds owned by the parish, transferred ownership to the city. Upon annexation, the city obtained full authority, control, and jurisdiction over such roads and roadbeds, including the authority over the mineral rights attributable to such acreage. As previously addressed, the issue of whether any specific dedication conveyed fee title of the land to the parish was not before the trial court and is not before us for review. Rather, we grant the city’s and EXCO’s motions for summary judgment on the narrow issue of the effect of the city’s annexation of public roads and roadbeds owned by the parish. Because of our decision reversing the trial court’s judgment, we consider the city’s assignments regarding the denial of |14its motion for a new trial and second motion for summary judgment to be moot.
CONCLUSION
For the reasons set forth in this opinion, we reverse the trial court’s judgment granting the cross motions for partial summary judgment in favor of the Caddo Parish Commission and Chesapeake Operating, Inc. We further reverse the trial court’s judgment denying the motions for summary judgment by the City of Shreveport and EXCO Operating Company, LP, and we render summary judgment in their favor as stated in this opinion.
Costs of this appeal are assessed to Chesapeake Operating, Inc., appellee.
REVERSED and RENDERED.

. Asserting that all proceeds under the competing leases are in dispute, EXCO sought to have Chesapeake deposit into the registry of the court all sums accruing, including the 75 percent net revenue interest owed to working interest owners under the leases. This is not at issue in this appeal.

. EXCO's motion refers only to dedicated property in Section 7.

.The case referred to is Webb v. Franks Inv. Co., 47,321 (La.App.2d Cir. 10/29/12), 105 So.3d 764, writ denied 2012-2549 (La.4/1/13), 110 So.3d 579, writs denied 2012-2552, 2012-2553 (La.4/1//13), 110 So.3d 580, and writs denied 2012-2556, 2012-2565 (La.4/1/13), 110 So.3d 581.

. This case was overturned as to the requirements of a tacit dedication by Cenac v. Public Access Water Rights Ass'n, 2002-2660 (La.6/27/03), 851 So.2d 1006.

. La. R.S. 41:1701 declares that the beds and bottoms of all navigable waters belong to the state and are "public lands” and are to be protected, administered, and managed by the Department of Natural Resources.